[Crim. No. 288. In Bank.—September 14, 1897.]

# THE PEOPLE, Respondent, v. JOHN T. NEWCOMER, Appellant.

CRIMINAL LAW—HOMICIDE—SELF-DEFENSE—INTENTION TO KILL—ERRONEOUS INSTRUCTION.—Upon the trial of a defendant accused of murder, where the testimony for the defendant tended to show that the killing was done in self-defense, an instruction as to the presumption of intention to kill from the fact of shooting at and killing the deceased, which concludes with the statement that "unless it is shown by the evidence that his intention was other than his acts indicated, the law will not hold him guiltless," is erroneous as to such conclusion, as the defendant might have intended to kill, and yet have been guiltless.

ID.—INSTRUCTION AS TO REASONABLE DOUBT—USE OF WORD "DEMONSTRATE." An instruction that "it is sufficient if he [the defendant] demonstrate. to your understanding by testimony given, by inferences correctly and properly drawn from the whole testimony in the case, that notwithstanding the burden so cast upon him, there still exists in your mind a reasonable doubt of his guilt," though unhappily expressed in the use of the word "demonstrate," is not for that reason ground for reversal, as, taken in connection with the context, the jury could not have understood the instruction as requiring anything more than the raising of a reasonable doubt.

ID.—WAYS AND METHODS OF WEIGHING TESTIMONY—PROVINCE OF JURY—IMPROPER INSTRUCTION—ERROR WITHOUT INJURY.—The jury alone has power to weigh the testimony of witnesses and to determine the facts, and it is not proper for the court to instruct them as to ways and methods by which they shall exercise their powers; but, where the instruction merely tells the jury to do certain things which jurors would evidently do without being told, the error is without injury, and not ground of reversal.

ID.—INSTRUCTION AS TO SELF-DEFENSE—DUTY OF AGGRESSOR TO DECLINE FURTHER STRUGGLE—LANGUAGE OF CODE—IMMATERIAL DEPARTURE.—In giving an instruction as to the conditions under which the right of self-defense may be asserted, it is better to use the words of section 197 of the Penal Code, when the court is endeavoring to state the principle announced in the statute; but where the court has used the statutory words in another part of the charge, in regard to the duty of an aggressor to "have endeavored to decline any further struggle," the statement that he must have "in good faith withdrawn from the contest before any fatal blow was given," is not such a material departure as to mislead the jury, and will not justify a reversal of the judgment.

ID.—DEFENDANT AS FIRST ASSAILANT—CREATING NECESSITY FOR SELF-DEFENSE—INAPT FORM OF INSTRUCTION.—An instruction to the effect that a necessity for self-defense cannot be created where the cause of the homicide originates in the fault of the party committing it, unless

he in good faith first declines further struggle, would be better founded upon a clear statement of the hypothesis that the defendant was the first assailant; but where an instruction assumes that the cause of the homicide "originates in the fault of the party himself, in a quarrel which he has provoked and brought on, in a danger which he has voluntarily brought upon himself by his own misconduct and lawlessness," and concludes that he cannot, "upon killing the person with whom he seeks the difficulty, interpose the plea of self-defense; unless, if he was the aggressor, that he had really and in good faith endeavored to decline any further struggle before the mortal blow was given," it cannot be assumed, considering the latter part of the instruction, that the jury would understand from the first part of it, that, if the defendant had merely used disagreeable and provoking words, he could not defend himself against an attack of the deceased brought on by such words; and though the instruction, taken as a whole, is in a form not approved of, its inaptness of form is not alone sufficient to warrant a reversal of the judgment.

Id.—REASONABLE DOUBT AS TO DEGREE OF CRIME—FORM OF INSTRUCTION AS TO VERDICT—ACQUITTAL OF "HIGHER" OFFENSE.—An instruction as to what verdict should be rendered, where there is a reasonable doubt as to the degree of the crime, would better be given in the statutory language of section 1097 of the Penal Code, which provides that "when it appears that the defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only"; but where an instruction, in a case of homicide, states that the jury "may, if the evidence warrants it, find the defendant guilty of murder in the first degree, or murder in the second degree, or of manslaughter," and that "should the jury entertain a reasonable doubt as to which of the grades of crime named the defendant may be guilty of, if any, they will give the defendant the benefit of the doubt, and acquit him of the higher offense," the instruction is not misleading, and does not tell the jury merely to acquit of the highest of the three offenses named, and it is not to be presumed that the jury understood the word "higher" in any other than its grammatical sense as denoting one of two things.

Id.—BURDEN OF PROOF—REASONABLE DOUBT—REFUSAL OF INSTRUCTION.— Where there is nothing in the evidence for the prosecution to take the case out of the rule declared in section 1105 of the Penal Code, that "the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable," and where the court has properly instructed the jury upon the subject of the burden of proof, and that it is sufficient if the defendant raises a reasonable doubt of his justification, it is proper to refuse an instruction asked by the defendant to the effect that the burden of proving circumstances that justify the killing of the deceased by the defendant does not rest upon the defendant.

Id.—SUDDEN ATTACK UPON PERSON WITHOUT FAULT—RIGHT TO STAND GROUND —No DUTY TO FLEE—IMPROPER MODIFICATION OF INSTRUCTIONS—CASE

CRITICISED.—The duty of the defendant to flee rather than to kill, if retreat is possible, only applies where the defendant is the assailant; but when a defendant who is himself without fault is suddenly attacked in a way that puts his life or bodily safety at imminent hazard, he is not compelled to fly or to consider the proposition of flying, but may stand his ground and defend himself to the extent of taking the life of the assailant, if that be reasonably necessary; and an instruction requested embodying the right of a person who is without fault to stand his ground against an assailant, and to slay him under appearances justifying it, "even if it be proved that he might more easily have gained his safety by flight," should be given as asked, and it is error to modify it so as to instruct the jury that "if he could have withdrawn from the danger, it was his duty to retreat," and that "between his duty to flee and his right to kill he must fly."

ID.—ATTACK IN ONE'S OWN HOUSE—SELF-DEFENSE—FLIGHT NOT REQUIRED—PREJUDICIALLY ERRONEOUS MODIFICATION OF INSTRUCTION.—When a man without fault is suddenly attacked in his own house, in a murderous or dangerous manner, he is not called upon to flee from his home, nor to consider the proposition of so fleeing; and where the defendant testified that he was assaulted by the deceased with a pistol, when he was in his own home, and that in order to protect his own life he was compelled to shoot, and did shoot, the deceased first, an instruction properly based upon that evidence should be given as requested by the defendant; and a modification of the instruction, so as to ignore the defendant's evidence, and to treat him as an aggressor whose duty it was to flee rather than to kill, if retreat were possible, is inapplicable, and prejudicially erroneous.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. S. Robinson, J. B. Curtin, and Byron Waters, for Appellant.

W. F. Fitzgerald, Attorney General, and Henry E. Carter, Deputy Attorney General, for Respondent.

McFARLAND, J.—The defendant was charged with the murder of one Caleb Dorsey, and was convicted of murder in the second degree. He appeals from the judgment and from an order denying his motion for a new trial.

The appellant bases his contention for a reversal upon the grounds: 1. Insufficiency of the evidence to justify the verdict; and 2. Errors committed by the court in its instructions to the

jury. As in our opinion, the judgment must be reversed upon the second ground, it is not necessary to consider the first ground.

Although the evidence taken at the trial occupies a good many pages of the transcript, a great deal of it is unimportant. The material evidence and the real facts to be determined by the jury lie within very narrow limits. In order to illustrate the bearing of the instructions objected to upon the real merits of the case, it is proper to make a very short statement of the conditions under which the homicide was committed. The appellant and the deceased were mining partners, and joint owners of certain mining property upon which at the time of the homicide they were conducting mining operations. There was a small cabin on the premises in which appellant slept and ate; and it was actually and legally his home. On the morning of the homicide the deceased and the appellant went into that cabin; and while they were there, no other person being present or within sight of them, the appellant killed the deceased by shooting him with a pistol. Immediately thereafter the defendant left the cabin and locked it; got a horse that was on the premises, and rode to the county seat of the county and delivered himself up to the sheriff. Before he procured the horse he told one or two persons that the deceased had gone up into the hills to look after some timber, but as soon as he had mounted the horse and was ready to leave he told one of the employees that he had killed the deceased, gave him the key of the cabin and told him to open it, and that he, appellant, was going to deliver himself up to the sheriff. He gave as the reason why he did not tell the first persons he saw that he had killed the deceased that he feared violence and did not want it to be known until he was ready to leave. He testified at the trial that at the time of the homicide the deceased was about to shoot him, appellant, with a pistol, and that in order to protect his own life he was compelled to shoot, and did shoot the deceased first. He testified that from what the deceased had himself told him, and from other information which he had received of the character of the deceased, the latter was a determined man, highly irascible, and accustomed to use firearms when excited. There had been some differences between the

parties of a rather unfriendly character about the management of the mine; and there was evidence other than the testimony of the appellant that the deceased, in case of any sharp dispute with appellant, was liable to kill the latter, and had made threats of violence against him. Under these circumstances, if the appellant was justified in killing the deceased, as he might have been, he was in the embarrassing position of one who justly kills another when there is no other witness to the homicide, when he has to admit the homicide and depend greatly upon his own testimony to justify it. In such a case it is evident that a jury will have difficulty in determining the real facts; and in such a case it is apparent that the instructions of the court are very important—particularly when, as in the case at bar, the court instructs at great length. Under such circumstances, any instruction tending to lead the jury from the real issues in question is material, and if erroneous is reversible error.

In our opinion, the judgment must be reversed on account of a modification which the court made to the fourth instruction asked by the appellant, on pages 55 and 56 of the printed transcript.

But as a new trial must be ordered, for the benefit of the court upon another trial certain other instructions must be noticed.

The first instruction objected to by appellant is as follows: "Every person is presumed to intend what his acts indicate his intention to have been, and, if you find from the evidence beyond a reasonable doubt that the defendant shot the deceased with a pistol and killed him, the law presumes that the defendant intended to kill the deceased; and, unless it is shown by the evidence that his intention was other than his acts indicated, the law will not hold him guiltless." Appellant objects to this because it omits to state that this presumption does not arise where "the proof on the part of the prosecution tends to show" that the killing was justifiable. It is evident, however, that this instruction does not deal with the question as to when the burden of proof is on the defendant to show that the killing was justifiable; it deals only with the question of the intent to kill. In this view the instruction would not have been erroneous if it

had not closed with the expression, "the law will not hold him guiltless." The court no doubt intended to say that the shooting of the deceased with a pistol was sufficient proof of his intent to kill, in the absence of any other evidence tending to show that he did not intend to kill; but the conclusion that in the absence of any such other proof "the law will not hold him guiltless" was erroneous, because he might have intended to kill and yet have been guiltless.

Appellant also objects to the following part of the charge: "It is sufficient that he demonstrated to your understanding, by testimony given, by inferences correctly and properly drawn from the whole testimony in the case, that notwithstanding the burden so cast upon him, there still exists in your mind reasonable doubt of his guilt." The stress of this objection was directed to the word "demonstrate." As was said in a former case, "demonstrate" is an unhappy word to be used in this connection; but as was there said, we do not think that, considered in connection with the context, the jury could have thought it meant anything more than the raising of a reasonable doubt; and we do not think that the use of that word would be sufficient to warrant a reversal.

The court instructed the jury that "you should carefully scrutinize all the testimony in this case, and in doing so consider all the circumstances under which each witness has testified, his degree of intelligence, his manner on the witness stand," and then follows other matters which the court tells the jury they ought to consider in estimating the value of the testimony of witnesses. Appellant objects to this instruction upon the ground that it goes farther than the instruction approved in *People v. Cronin,* 34 Cal. 200; that this court has frequently disapproved of the instruction in the Cronin case, advised its omission, and has suggested that a case would be reversed if that instruction were given with any matters of importance added to it. But the instruction in the Cronin case was expressly directed to the testimony of the defendant in that case, while in the case at bar the instruction is general, and refers to any and all witnesses. The instruction here, therefore, cannot be considered erroneous upon the ground that it adds to the instruction in the Cronin case. Indeed, in this present case, at

the request of the prosecution, an instruction was given refer-
ring to the testimony of the appellant in the precise language
used in the Cronin case; and to that instruction the appellant
takes no exception. In our opinion the instruction now under
consideration was improper because it went beyond the legiti-
mate province of a court. Under our system, the jury alone has
power to weigh the testimony of witnesses and to determine the
facts, and it is not proper for the court to direct them as to the
ways and methods by which they shall exercise their own pow-
ers. Still it is quite evident that, while the instruction was out-
side of the proper powers of the court, it could not possibly have
done any harm; for it was merely telling the jury to do certain
things which jurors would evidently do without being so told.
Therefore it was not reversible error.

Appellant objects to the following part of the charge: "The
right of self-defense is expressly recognized by our Penal Code,
which I have just read to you, and the conditions under which
it may be asserted are clearly defined. They are, among others,
that the party was not the first aggressor; or, if he was the ag-
gressor, that he had in good faith withdrawn from the contest
before any fatal blow was given."

The objection to this instruction is that the words "withdrawn
from the contest" were used instead of the statutory words used
in subdivision 3 of section 197 of the Penal Code, to wit, "have
endeavored to decline any further struggle." It would certainly
have been better to have used the words of the statute whenever
the court was endeavoring to state the principle announced in
the statute; but, as the court had used the statutory words in an-
other part of the charge when this principle was being stated.
we hardly think that the jury was led astray by that part of the
charge objected to. And we do not think that this omission
alone would justify a reversal of the judgment.

Appellant also objects to the following part of the charge:
"But a cause which originates in the fault of the party himself,
in a quarrel which he has provoked and brought on, in a danger
which he has voluntarily brought upon himself by his own mis-
conduct and lawlessness, cannot be and is not considered in law
a reasonable or sufficient ground to support the right of self-
defense. No man, by his own lawless act, can create a necessity

for acting in self-defense, and then, upon killing the person with whom he seeks the difficulty, interpose the plea of self-defense; unless, if he was the aggressor, that he had really and in good faith endeavored to decline any further struggle before the mortal blow was given." The objection to this charge is directed principally to the first part of it, and it is contended that the words "fault of the party himself," and "a quarrel which he had provoked and brought on," tended to induce the jury to believe that if the appellant had merely used some disagreeable words to the deceased, that the use of such words would have been a "fault," and a provocation which would have taken away from him the right to defend himself against an attack of the deceased brought on by such words. Considering the latter part of the instruction, we hardly think that the first part is susceptible of the construction given to it by appellant; and although we cannot approve the whole of the instruction as it stands, still it alone would not warrant a reversal of the judgment. In an instruction upon that subject it would be better to found it upon a clear statement of the hypothesis that the defendant was the first assailant.

The court gave the following: "Under the information in this case, you may, if the evidence warrants it, find the defendant guilty of murder in the first degree, or murder in the second degree, or of manslaughter. Should the jury entertain a reasonable doubt as to which of the grades of crime named the defendant may be guilty of, if any, they will give the defendant the benefit of the doubt, and acquit him of the higher offense." Appellant contends that this is an erroneous and misleading statement of the principle declared in section 1097 of the Penal Code, because it supposes a doubt as to three degrees, and merely tells the jury that in such event they should acquit of the highest of the three; while the code refers to a doubt as to two degrees, and declares that there can then be a conviction of only the lowest. This criticism is not without some plausibility; but the language of the instruction cannot be magnified into a reversible error. In its grammatical meaning the word "higher" means one of two things, and it is not to be presumed that the jury understood it in any other sense, or were at all led astray

by the instruction. Of course, the use of the statutory language would have been better.

We do not think that the court erred in refusing to give the instruction asked by appellant to the effect that "in this case the burden of proving circumstances that justify the killing of the deceased by the defendant does not rest upon the defendant." We see nothing in the evidence offered by the prosecution to take this case out of the rule declared in section 1105 of the Penal Code. Of course, under former decisions it is sufficient if a defendant raises a reasonable doubt of his justification; and that principle was fully stated in the charge.

The fourth instruction asked by appellant, and hereinbefore referred to, is as follows: "Where one without fault is placed under circumstances sufficient to excite the fears of a reasonable person that another designs to commit a felony or some great bodily injury upon him, and to afford grounds for a reasonable belief, as a reasonable man, that there is imminent danger of the accomplishment of this design, he may, acting under these fears alone, slay his assailant and be justified by the appearances. And, as where the attack is sudden and the danger imminent, he may increase his peril by retreat, so situated he may stand his ground, that becoming his 'wall,' and slay his aggressor, even if it be proved that he might more easily have gained his safety by flight." This instruction was clearly right and should have been given, as requested by appellant, without any modification. (*People v. Hecker*, 109 Cal. 467.) The court, however, added to the instruction quite a long modification, as follows: "The rule in such cases is this: What would a reasonable person, a person of ordinary caution, judgment, and observation, in the position of the defendant, seeing what he saw, and knowing what he knew, suppose from this situation and these surroundings? If such reasonable person so placed would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril, and acting upon such appearances. The defendant is not necessarily justified because he actually believed that he was in imminent danger. When the danger is not apparent, and not actual and real, the question is: Would a reasonable man, under all the circumstances, be justified in such belief? If so the de-

fendant will be so justified. If this was defendant's position it was his right to repel the aggression, and fully protect himself from such imminent danger. If he could have withdrawn from the danger, it was his duty to retreat. Between his duty to flee and his right to kill, he must fly; or, as the books have it, must retreat to the wall; but by this is not meant that a party must always fly, or even attempt flight; the circumstances of the attack may be such, the weapon with which he is menaced of such a character, that retreat might well increase his peril. By 're-treating to the wall' is only meant that the party must avail himself of any apparent and reasonable avenues of escape by which his danger might be averted and the necessity of slaying his assailant avoided."

Under the authorities cited and quoted in the opinion of this court in *People v. Lewis,* 117 Cal. 186, the modification of said instruction by the court as above stated was erroneous. The language of the modification constitutes part of a long charge by the lower court given in *People v. Iams,* 57 Cal. 115. The opinion of the appellate court in that case deals almost entirely with questions which did not arise out of the instructions to the jury; but in a few lines at the close of the opinion the entire charge of the court to the jury, which was a very long one, was approved. It does not appear from the report of the case what particular part of the charge was objected to by the appellant in that case, or that the part of the charge which constitutes the modification in the case at bar was particularly called to the attention of the court. In *People v. Williams,* 73 Cal. 531, this court says, with respect to the charge in the Iams case, that "but a small part of it was really involved in the exceptions taken in that case, and as to the rest it was obiter; and in *People v. Lewis, supra,* that part of the charge in the Iams case which constitutes the modification in the case at bar was reviewed, and it was substantially said that it was applicable only to cases where the defendant was the assailant. It is to be observed that the instruction in the case at bar which the court modified commences with the words, "where one without fault is placed under circumstances sufficient," etc., and the whole instruction as modified refers entirely to the case where the defendant is "without fault." It goes upon the theory that where one entirely without fault himself is sud-

denly attacked under such circumstances as to induce a reason-
able man to believe that he was in imminent danger of imme-
diate death or great bodily harm, he must fly, if flight was ap-
parently possible. The modification says that under such cir-
cumstances, "if he could have withdrawn from the danger it
was his duty to retreat." Then comes this remarkable clause:
"Between his duty to fly and his right to kill, he must fly." Per-
haps it might be said that this language taken literally does not
mean anything. It might be said that "his duty to flee" and
"his right to kill" cannot both exist at the same time, and that
therefore there could be nothing "between" them; but how
could the jury take it to mean anything else than that when a
man, although without fault himself, is assailed in the manner
described, he must in all cases fly, if flight be possible? But
that is not the law; of course, a man is not justified in seeking
an affray, but when a man without fault himself is suddenly at-
tacked in a way that puts his life or bodily safety at imminent
hazard, he is not compelled to fly or to consider the proposition
of flying, but may stand his ground and defend himself to the
extent of taking the life of the assailant, if that be reasonably
necessary. This is the law as expressed in *People v. Lewis, supra,*
and the authorities there cited, in *People v. Hecker,* 109 Cal. 467,
and by the highest court of the land in *Beard v. United States,*
158 U. S. 550. In *People v. Hecker, supra,* this court says: "So
that while the killing must still be under an absolute necessity,
actual or apparent, as a matter of law that absolute necessity is
deemed to exist when an innocent person is placed in such sud-
den jeopardy. The right to stand one's ground should form
an element of the instructions upon the necessity of killing and
the law of self-defense." Moreover, the appellant in the case
at bar was in his own house at the time of the homicide, and
therefore the case is not essentially different in this respect from
that of *People v. Lewis, supra,* where it was held that a person
attacked in his own house need not flee, and that to such a situ-
ation the language used in the modification now under review
was inapplicable and erroneous. The only difference between
the two cases is, that in the Lewis case the deceased was on the
outside of the house and was approaching it for the purpose of
making a deadly assault upon the defendant who was within

the door; while in the case at bar appellant and deceased were both in the house, the latter not having been, in the first instance, a trespasser. But when a man "without fault" himself is suddenly attacked in his own house in a murderous or dangerous manner, he is not called upon to flee from his home, or to consider the proposition of so fleeing. Therefore, whether or not the language of the modification would be admissible under any circumstances, it was clearly in the case at bar, and, in the connection in which it was used, inapplicable, erroneous, and prejudicial to appellant; and for this reason the judgment must be reversed. Of course, the jury were not bound to take the testimony of the appellant as true; but instructions should not ignore any findings of fact which a jury might reasonably make upon the evidence before them. The main issue of fact in the case was, Did the evidence raise a reasonable doubt as to the question whether or not the killing of deceased by appellant was really done in self-defense? And to aid the jury in determining this issue it would seem that nearly all matters of law proper to be given by way of instructions could be found in the language of the code.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

Henshaw, J., Temple, J., Harrison, J., Van Fleet, J., and Garoutte, J., concurred.