[Crim. No. 1896. Second Appellate District, Division One.—June 6, 1930.]

THE PEOPLE, Respondent, v. FRANK P. WESTLAKE, Appellant.

W. T. Kendrick, Jr., and W. T. Kendrick, Sr., for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Buron Fitts, District Attorney, and Wayne Jordan, Deputy District Attorney, for Respondent.

CONREY, P. J.—By Rule VIII, governing appellate court practice, it is provided that briefs ''must present each point separately, under an appropriate heading, showing the nature of the question to be presented.'' In this case if we had been informed that the last paragraph of the closing brief contains a summary of the grounds upon which the appellant relies, we would have been saved the time wasted in hunting for them in the text of the opening brief.

The grounds of appeal are that the evidence is insufficient to support the verdict; that the *corpus delicti* is not established by the evidence; that the district attorney was guilty of misconduct prejudicial to the rights of the defendant; that the court erred in relation to instructions given and in its refusal to give requested instructions.

The information charges that the defendant, on the twenty-eighth day of March, 1929, did wilfully, etc., kill and murder one Laura B. Sutton. The evidence shows that on and prior to March 28, 1929, Mrs. Sutton was living at 2012 West Thirtieth Street, in the city of Los Angeles. In the late afternoon of March 29th she visited the office of her attorney, who had been representing her in a divorce action. They left the office together, and he left her on Seventh Street. So far as the evidence shows, that is the last time that she was seen alive. On the fourth day of April a schoolboy found in the Los Angeles river-bed a headless body, from which the arms and legs had been cut off. This body, or torso, was turned over to officers, and later was examined by the county autopsy surgeon, Dr. Wagner.

On the eighteenth day of April a group of schoolboys found in the Los Angeles river-bed, some distance below the place where the torso had been found, a human skull. This skull was delivered to officers and it also in due course came to Dr. Wagner for examination. In the testimony of Dr. Wagner we find abundant evidence that the head and the torso above mentioned were parts of the same person. There were articular surfaces of the vertebrae which joined thoroughly and were of the same size and general appearance. There were overlapping knife cuts on the head and

torso which appeared to have been made in a straight line and were opposed to each other. Without making a statement in further detail, it is sufficient to say that according to the evidence it is abundantly established that these remains of a human being were one and the same person, and belonged to a woman of the same general appearance and age as Mrs. Sutton. There is also very conclusive evidence that this deceased person was Mrs. Sutton. Without extended review of the evidence, it is sufficient to refer to the testimony of Dr. Hyde, a dentist who had rendered professional services to Mrs. Sutton at various times during a dozen or more years. He examined the jaws and teeth attached to the skull and identified them as belonging to Mrs. Sutton. For example, referring to the crown of a tooth, he positively recognized it as being his own work. He further recognized the shape of the mouth, the condition of the processes of the roots of the teeth, the prominence of the front teeth, the unusual spaces between them, and the location of certain fillings which corresponded with a chart on which they were shown and which he had made during the lifetime of Mrs. Sutton.

Concerning the cause of death, the evidence goes definitely further than the mere finding of the dismembered and severed body which someone must have endeavored to hide away in the sands of the river-bed. Dr. Wagner testified that he found a fracture on the left side of the skull behind the ear, and that in his opinion this fracture of the skull was the cause of death; also, that in his opinion the fracture had been caused by a hammer or an instrument shaped like a hammer. There are numerous other details of facts shown in the evidence, bearing upon the question of identity and the question of cause of death. All of this evidence has been carefully examined. We are satisfied that the evidence is amply sufficient to prove the *corpus delicti,* that is to say, that Mrs. Sutton is dead and that she was the victim of a murder.

But it is further contended by the defendant that even if Mrs. Sutton was murdered by somebody, the evidence is insufficient to prove that the murder was done by him. The evidence contains a long story concerning the relations of Mrs. Sutton to various persons during the last years of her life, including her relations with the defendant.

It appears that for some time there had been considerable intimacy between her and the defendant, and that she had trusted him very fully in her business affairs. Having purchased for $3,000 a parcel of real property, she caused the deed to be made to her brother, who afterward, at her request, conveyed this property to the defendant, and the defendant caused the deed to himself to be recorded on the third day of April, 1929. A joint bank account of Mrs. Sutton and the defendant had been created by her, consisting wholly of her money, and money was withdrawn from that account by him at various times. Mrs. Sutton had four shares of stock of the Southern California Edison Company. During the month of April, after her disappearance, the defendant used the certificate of this stock by pledging it as security for a loan which he obtained at a bank. When he applied for the loan and exhibited the certificate at the bank, her signature had not been indorsed thereon. Later he brought it back with her name indorsed. The evidence indicates that he imitated her signature. When this loan was made the defendant was given a deposit credit of $98. This was on the twenty-fourth day of April, 1929. On the twenty-eighth day of May, in making a statement at the sheriff's office in the presence of several persons there present, and in response to a question about this $98, the defendant said that he got some of it from his son. In a later statement he said that he had borrowed the $98 from the bank. After some further questioning he admitted that he had used the Edison stock as security. It further appears that in obtaining the loan Mrs. Sutton's name was signed with that of the defendant as a comaker of the note. At the trial of this case the defendant admitted that he signed her name to the note and indorsed her name on the back of the stock, but claimed that she had given him authority to use her name in that way.

The foregoing items are only a part of the facts and circumstances showing that after the disappearance of Mrs. Sutton, and probably after the time of her death, defendant appropriated to his own use substantially all of her property, and that at the time of her disappearance her affairs had been so arranged that her property was in his possession or in a situation to easily come into his possession and under his control. His conduct in relation to her property,

his evasions and misrepresentations, and his attempts to falsely make it appear that Mrs. Sutton was still alive, are facts which strongly support and sustain the inference of guilt.

■ Appellant claims that in two instances the district attorney was guilty of misconduct at the trial. It appeared in the evidence that at some time in the spring of 1929 the defendant had received an injury to his right hand, so that the hand was bandaged for a time. Counsel have not made clear to us how this fact was relevant to the case, nor have they assisted us to find in the voluminous record how the circumstance happened to be in evidence. It appears, however, that the defendant introduced in evidence, in connection with his own testimony, a letter received by him from an insurance organization, which referred to information given by one Dr. Solomon to the effect that in February, 1929, the defendant's right hand had been injured. On cross-examination the district attorney asked the witness if this Dr. Solomon was the doctor who wrote the death certificate for the defendant's wife, and also the death certificate of Mrs. Brown, an aunt of defendant's wife. On receiving affirmative answers to these two questions the district attorney asked: "Q. He writes all your death certificates?" The attorney for defendant objected to this question and assigned it as misconduct. The witness answered: "He is the family physician." The court said: "Objection sustained. The jury is instructed to disregard the question of counsel."

■ The second assignment of misconduct relates to an incident which occurred during the argument of the district attorney to the jury. After reciting certain portions of the evidence, for the evident purpose of convincing the jury that Mrs. Sutton had been murdered by the defendant, the district attorney said: "Dr. Westlake, after he killed Laura Sutton, wrapped the body in a sheet, carried it to the Los Angeles river and——." Interrupting at this point, counsel for defendant objected and assigned it as misconduct, as being unfounded upon any evidence in the case. The remainder of this passage reads as follows: "Mr. Stahlman: Merely a conclusion. Mr. Kendrick: There is no basis whatsoever for the statement. I am sorry to interrupt counsel, but I want to object. The Court: What state-

ment do you object to? Mr. Kendrick: Because it is not based upon any evidence in the case. The Court: What statement? Mr. Kendrick: He made the statement that Dr. Westlake, after he killed Laura Sutton, wrapped her in a sheet and carried her down—carried her body to the Los Angeles river. The Court: Oh, he can draw any conclusions he wants, if they are reasonable. If they are not reasonable the jury won't pay any attention to them. If they are reasonable they will consider them. He can draw conclusions from the facts.''

In both of these instances of alleged misconduct we think that the district attorney is justly subject to criticism. The questions asked about Dr. Solomon carried a vague sort of innuendo, not fair to the defendant. But it has not been made to appear that the item was or could have been seriously prejudicial to the defendant. In relation to the second act of alleged misconduct, it is apparent that the district attorney was dealing with circumstances concerning which there was no direct eye-witness. From the evidence he was entitled to argue that the defendant had killed Mrs. Sutton and had carried to the river the dismembered parts of her body. It is not claimed that there was any testimony that the body ever was wrapped in a sheet. Therefore such statement should not have been made. But while a prosecuting officer, in addressing the jury, should be expected and required to confine himself to the facts in evidence, this rule should not be enforced to the extent of reversing judgments on account of occasional inappropriate or improper phrases of small relative importance. We think that the rule should apply to the verdict here, that ''if it appears to our satisfaction that the result was just, and that it would have been reached if the error had not been committed, a new trial is not to be ordered.'' (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042, 1047].)

In Rule VIII it is provided that ''where instructions given to a jury are attacked as erroneous, all other instructions given, bearing upon that subject, must be printed in full in the appellant's brief. If it be claimed that instructions requested were erroneously refused, the refused instructions must be printed in full in appellant's brief, and all instructions given, bearing upon the subjects covered by the refused instructions, must be printed in appellant's brief

in full, or the substance thereof clearly stated, with citation to the line and page of the transcript where such instructions may be found." Appellant's brief does not conform with this rule, but it has been assisted by the brief of the attorney-general. There are two specifications of error in refusing to give instructions requested by the defendant. In each instance the subject matter of the proposed instruction was properly covered by other instructions given to the jury.

Defendant requested the court to give the following instruction: "The jury are instructed that in cases of circumstantial evidence the jury must not only be satisfied beyond a reasonable doubt that all the circumstances proved are consistent with the defendant having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other reasonable conclusion than that the defendant is the guilty person. *If there is any one single fact proved to the satisfaction of the jury by a preponderance of the evidence, which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt and the jury should acquit the defendant.*" The court gave the first sentence but omitted the second, and of this omission the appellant complains. The court did not err in refusing to instruct the jury in the language of said omitted sentence. To have given such instruction would have been to instruct upon the weight of the evidence, and thereby unwarrantedly trench upon the province of the jury.

Appellant contends that the court erred in giving the instruction found in the clerk's transcript at page 39, lines 22–25, and in giving the instruction found in said transcript at the bottom of page 35 and first 15 lines of page 36. These instructions relate to matters which may be taken into consideration in determining the credibility of witnesses, and especially their application to a defendant who has testified at the trial. We find no error in these instructions as given by the court. The assignment of error upon the first of these instructions is directed to the following language: "And the tests for determining credibility of witnesses as given you in another part of the instructions are to be applied to his testimony alike with that of all other witnesses." Counsel have not offered either argument or authority in support of their claim that this was error.

The second of said instructions is substantially in conformity with instructions which, from time to time, have been approved. (*People* v. *Newcomer*, 118 Cal. 263, 268 [50 Pac. 405]; *People* v. *Bernal*, 40 Cal. App. 358, 361 [180 Pac. 825].)

The judgment and order are affirmed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 17, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 3, 1930.

Preston, J., dissented.