[Civ. No. 2304.   Third Appellate District.—June 30, 1921.]

# P. L. BURR, Appellant, v. L. GARDELLA et al., Respondents.

[1] PUBLIC WORK—SUBCONTRACT—BOND.—A subcontractor, in cases of contracts for the performance of public work, may be required by the contractor to execute to him the bond provided for in the statute of 1897 (Stats. 1897, p. 2122).

[2] SURETIES—EXONERATION.—A surety is favored in law, and any act by the obligee which is injurious to his rights will operate as an exoneration of his obligations as such surety.

[3] ID.—PREMATURE PAYMENTS BY CONTRACTOR—PRO TANTO EXONERATION.—Premature payments by the contractor to the subcontractor will not release the sureties of the subcontractor from their entire obligation, but only from that part of the subcontractor's default that may be made up of such premature payments.

[4] ID.—LIABILITY OF CONTRACTOR TO MAKE PAYMENTS—OBLIGATION OF SURETIES.—Sureties upon a bond given for the proper execution of the terms of a subcontract, under a contract for the performance of public work, undertake their obligation with full knowledge of the proposition that creditors of the contractor cannot be compelled to postpone the enforcement of their claims beyond the time at which they may agree with the contractor that they shall be paid, and their obligation as such sureties no less requires them to stand good for the faithful execution of the terms of the contract in that particular than for any other vital provision thereof.

[5] ID.—DUTY OF CONTRACTOR TO MAKE PAYMENTS—INABILITY TO RETAIN AGREED PERCENTAGE—RIGHTS OF SURETIES NOT IMPAIRED.—Where such a subcontract provides that the contractor shall withhold twenty-five per cent of all payments becoming due the subcontractor for a period of thirty-five days after the completion of the contract, and also expressly provides that creditors must be paid when due and payable, if such payments to creditors are required to be made prior to the expiration of the thirty-five days and it becomes necessary for the contractor to pay them and it is impossible, from the extent of such obligations, to retain the twenty-five per cent provided by the contract, it cannot be held that the payment of them under such circumstances is such a violation of the terms of the contract as to affect or change or impair the rights of the sureties, either in whole or in part.

3. Premature payment to principal as release of surety on contractor's bond, notes, 2 Ann. Cas. 766; 8 Ann. Cas. 245; Ann. Cas. 1915C, 674.

[6] Bankruptcy — Pleading — Evidence — Knowledge of Filing of Petition—Insufficient Findings—Judgment.—In this action by a contractor against a subcontractor, and against his sureties, assuming that the trial court was authorized to take judicial notice of the discharge in bankruptcy of the defendant subcontractor, although he did not set that up as a defense to the action, and further assuming that it was true that plaintiff had actual knowledge of the filing of the petition of said defendant to be declared a bankrupt prior to the time at which he was so adjudged and discharged from his indebtedness, the trial court having failed to find that plaintiff did have such actual knowledge, the mere finding that said defendant was adjudged a bankrupt, considered in connection with the concession of counsel that plaintiff was not, as a matter of fact, included among the creditors of said defendant in his petition, was ineffectual for any purpose and in no manner or measure added any support to the judgment in favor of said defendant.

[7] Sales—Breach by Buyer—Retaking of Possession by Vendor —Compensation for Use—Measure of Recovery.—Where the purchaser of a truck under a conditional sale contract in the form of a lease breaches his agreement in the matter of the payment of the installments, and the vendor retakes possession thereof, the latter is not entitled to maintain an action for the purchase price or for the rental agreed on in the contract, but is limited to the reasonable value of the use thereof by the purchaser.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. H. Countryman for Appellant.

George F. Jones for Respondents.

HART, J.—The plaintiff, in the month of June, 1914, entered into a contract with the state of California, through and by its department of engineering, whereby the former agreed to construct a portion of a state highway in Butte County, "between Lindo Channel, one and one-half miles north of Chico, and the northerly county boundary—Division 3, Route 3, Section D." On the fifteenth day of April, 1915, the plaintiff and the defendant Keith made and entered into a written agreement, by the terms of which said Keith, for a certain specified consideration, was to haul and transport or carry from Cana or "any other point on the

line of the Southern Pacific Railroad or Northern Electric Railroad," where the State Highway Commission may deliver the same, certain materials (mineral aggregate) necessary to be used in the construction of said portion of said state highway by the plaintiff under his contract with the state of California. Among the provisions of the contract between plaintiff and Keith is the following, after specifically setting forth the sums to be paid to and received by said Keith for the transportation and delivery of said materials as provided therein: "Said payment shall be made five days after said first party shall receive from said Highway Commission his respective payments according to the terms of said contract between said first party and said Highway Commission for deliveries of said mineral aggregate; provided, however, that at least twenty-five per cent of said respective payments due said second party shall be retained by said first party for the period of thirty-five days after the completion of this contract." The contract also provides for the retention by the first party of an amount in addition to the said twenty-five per cent sufficient to meet any claims growing out of said contract as to which stop notices may be served either upon the party of the first part or the highway commission. It is also provided in said contract that if the second party shall fail to comply with the terms of said contract the first party may take entire charge of the work of delivering and distributing "said mineral aggregate and charge the entire cost to said second party." The second party agreed to furnish all necessary equipment and labor to perform said work at his own cost and expense, and also to give a bond conditioned for the faithful and complete performance of the terms of said contract.

The sureties on the bond given by defendant Keith for the performance of said contract are the defendants L. Gardella, Ames Vaughan, and J. R. Vaughan. The sum to which said sureties bound themselves on said bond was $2,000, and the condition of the obligation was that the party of the second part would faithfully perform all the terms of the contract.

The action here is against said Keith for $2,036 and against the sureties on said bond for $2,000, the sum in which the sureties became bound on their bond.

The complaint is in four counts, to wit: 1. That, in performing the contract between plaintiff and defendant Keith, the latter became indebted to the plaintiff in the sum of $911.36, "as and for a balance due for and on account of work, labor done and performed and materials furnished by this plaintiff to and for said defendant, Keith, under said contract"; 2. That the defendant Keith, as principal, and the bondsmen on his surety bond, agreed to pay or secure the payment of all claims for labor, materials, and supplies furnished "for hauling and transporting from Cana or any other point on . . . said mineral aggregate to the points designated"; that, in performing the said contract between plaintiff and defendant, "said defendant, F. M. Keith, became indebted to this plaintiff in the sum of $1,125.00 for and on account of the agreed rental of a certain motor-truck called a 'Knox' truck"; that "said motor-truck was rented by said plaintiff to said defendant at the agreed or stipulated price of $250 per month; that said defendant used said motor-truck for four and a half calendar months at said agreed rental of $250 per month, making a total sum of $1,125"; that "said truck was used by said Keith in the performance of said contract" between him and plaintiff; 3. That defendant Keith, in performing said contract between him and plaintiff, became indebted to the latter in the sum of $911.36 "for and on account of moneys paid, laid out, expended, loaned and advanced to and for said defendant, Keith, by this plaintiff at the special instance and request of said defendant Keith"; 4. That plaintiff rented the Knox motor-truck above mentioned to defendant Keith, to be used in the performance of the said contract between Keith and plaintiff, that Keith so used said truck for the period of four and a half calendar months, and that "the reasonable value of the use of, and the reasonable rentals for said Knox truck is and are now, and during all of the times herein mentioned has and have been the sum of $250 during each calendar month."

The complaint alleges that for a valuable consideration the said defendants, Gardella, the two Vaughans, and Keith, executed as sureties the bond in question here.

The defendants filed separate answers—that is, the defendant Keith filed an answer and the other defendants filed a joint answer as sureties on said bond.

Keith's answer specifically denied that there was anything due plaintiff under the contract to which they were parties, and also, as to the claim of Burr, as alleged in his complaint, that said Keith was indebted to him in the aggregate sum of $1,125 as rental for the use of the Knox truck mentioned in the complaint, pleaded and set out *in haec verba* a written agreement, dated May 24, 1915, whereby, so he averred, the plaintiff sold to him said truck for the sum of $1,500, said agreement being in the following language:

"$1500.00.            Chico, California, May 24, 1915.

"For value received I promise to pay to the order of P. L. Burr the sum of Fifteen Hundred and No-100 Dollars in installments of Two Hundred and Fifty and No-100 Dollars, each, due on the 25th day of each month, commencing on, and the first payment due June 25th, 1915, and a like amount due on the 25th day of each month thereafter until the principal sum is fully paid, all principal, to bear interest at the rate of 7 per cent per annum, payable monthly. Should the interest not be so paid, it shall become a part of the principal and thereafter bear interest at the same rate. Should default be made in payment of any installment of the principal or interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. Principal and interest payable in Gold Coin of the U. S. at Chico, California.

"F. M. KEITH.

"The consideration expressed in the foregoing promissory note, is the value of the following property leased and delivered to the maker thereof, by payee, to wit:

"1 Knox Auto Truck, Truck No. 4337.

"Upon the payment of said note as provided, the lessors agree upon the receipt of one dollar, to sell, and to deliver a bill of sale of said property to said lessee, and until such payment, then the title and ownership thereof remain in the lessors and assigns. Upon failure to pay said note as provided, said lessors may take possession of said property without process of law, and the amount paid on said note shall be retained by them as and for the rent of said property. In the event of destruction of the property herein

referred to lessee agrees to pay any balance remaining due upon the above note in full.''

The answer alleges that the ''defendant was not able to pay and made no payments of the installment of purchase price provided for in said agreement or promissory note and that thereafter, and on or about the first day of September, 1915, plaintiff, exercising the option provided for in said agreement, took possession of said truck and ever since has had and now has possession thereof.''

In their joint answer, the sureties, Gardella and Ames and J. R. Vaughan, admitted the execution of the bond by them and the execution of the subcontract between Burr and Keith, but denied, on want of information and belief, that there was anything due Burr from Keith under said bond or said subcontract. As to the claim of plaintiff of rental for the use of the Knox truck, they set up as a defense thereto the agreement for the purchase of said truck, the allegations of their answer in that respect being the same as those contained in the answer of Keith. They set up the further special defense that the bond was drawn in compliance with the terms of the said subcontract and executed for the purpose of guaranteeing or assuring the full and faithful performance by Keith of the terms of said subcontract, and alleged that the plaintiff violated the terms of said contract in that he paid to said Keith, or on his account, prior to the expiration of the period of thirty-five days after the completion of said contract more than seventy-five per cent of the payments due from him (plaintiff) to said Keith under said contract, ''and that the said P. L. Burr did not retain twenty-five per cent of said respective payments for the period of thirty-five days after the completion of said contract, or for any part or portion of said period.''

The court found that the special defenses set up in each answer were sustained by the proofs, and that there was nothing due from the defendant Keith under any of the counts of his complaint.

Besides the findings on the issues submitted by the pleadings the court made the following finding, the subject matter thereof not having been pleaded or made an issue:

''That since the above entitled action was commenced, the defendant, F. M. Keith, has been adjudged a bankrupt and

discharged from the payment of his debts, in the United States District Court in and for the Northern District of California; that the order declaring said F. M. Keith a bankrupt was made on the 11th day of January, 1918, and that a duly certified copy of said order is filed in this court.''

As a conclusion from the findings the court adjudged that plaintiff was not entitled to judgment as against any of the defendants, and accordingly rendered judgment ''that plaintiff take nothing by his action as against defendants or any of them,'' etc.

This appeal is brought here by the plaintiff from said judgment.

The bond executed to plaintiff by defendants contains this provision:

''The condition of this obligation is such that if the above bounden F. M. Keith, . . . shall pay or satisfactorily secure the payment of all labor, materials and supplies furnished for hauling and transporting . . . , mineral aggregate to points designated, in connection with the contract of P. L. Burr, in Butte County, Cal., in accordance with the terms and conditions of the contract, dated the 15th day of April, 1915, a copy of which is or may be hereto attached as forming a part hereof, and as required by the provisions of an act of the legislature, approved March 27th, 1897, entitled 'An act to secure the payment of the claims of materialmen, mechanics, or laborers employed by contractors upon state, municipal or other public works', and the acts amendatory thereof, and shall, in all things stand to and abide by, and well and truly keep and perform the covenants and agreements contained in the said contract and any alteration thereof made as therein provided, on part to be kept and performed, at the time and in the manner therein specified, and in all respects according to their true intent and meaning, and shall indemnify and save harmless the said P. L. Burr, . . . , as therein stipulated then this obligation shall become and be null and void; otherwise to remain in full force and virtue.''

The said bond and the scope of the obligations of the bondsmen thereunder must be considered and construed by the light both of the agreement between the plaintiff and

the defendant Keith, and the contract between the plaintiff and the state, and also in view of the law relating to such contracts.

The agreement between the plaintiff and Keith, immediately following a reference in the preamble to the contract between the plaintiff and the state, reads, in part, as follows: "Now, therefore, subject to the terms and provisions of said contract and pursuant to the terms and provisions thereof, and in order to comply therewith, it is agreed by and between the parties hereto as follows": and then follows a specification and description of the work to be done thereunder by Keith. The contract between plaintiff and the state, among other things, provides, as of course the law requires, that plaintiff "will pay all bills for labor, material and supplies contracted for by him, on account of the work herein contemplated, *when same become due and payable*," etc. It is further provided in said contract that the state, by and through its engineering department, may at its option and at any time retain out of any amounts due the contractor sums sufficient to cover any unpaid claims arising against the contract by reason of the contract, and, furthermore, may at its option and at any time pay any such unpaid claims out of the amounts so retained, upon sworn statements of such claims filed with the engineering department.

Said contract also contains a provision to the effect that unless the work called for thereby is in all respects finished or completed before the expiration of 250 consecutive days, Sundays excepted, from the date of approval of said contract by the attorney-general, damage will be sustained by the state of California, and that it is and will be difficult and impossible to ascertain and determine the actual damage which the state will sustain by reason of such delay, and it is, therefore, "agreed that said contractor will pay to the said Department of Engineering the sum of $50 per day for each and every day's delay beyond the time herein prescribed, in finishing the said work"; and it was further agreed by the contractor that the "department of engineering might deduct the aggregate amount of such penalty from any money due or that may become due said contractor under this contract."

It should be added that the agreement between the plaintiff and Keith contained the following among its other provisions and terms:

"Under no circumstances shall said second party remove any equipment from said work until he shall have fully performed all work to be done hereunder and fully performed all the terms hereof and any and all equipment of said second party may be used by said first party free of cost in carrying out the terms and provisions hereof, and the work to be done hereunder."

As stated, the above provisions of the two contracts involved herein became and are essential parts and of the very essence of the obligation to which the sureties by their bond subscribed and so bound themselves.

From the answer of said sureties and the findings of the court it becomes readily manifest that the ground upon which the sureties claim to be exempt from liability upon their bond is that the plaintiff, in violation of the requirement of his contract in that particular, failed to retain, for a period of thirty-five days after the completion of said contract, twenty-five per cent of all payments becoming due to Keith thereunder, it being the contention that the result of such failure was to impair the rights of said sureties as such.

[1] Under the authorities, there can be no doubt but that a subcontractor in cases of contracts for the performance of public work may be required by the contractor to execute to him the bond provided for in the statute of 1897. (Stats. 1897, p. 201; *French* v. *Powell,* 135 Cal. 636, [68 Pac. 92]; *Associated Oil Co.* v. *Commary-Peterson Co.,* 32 Cal. App. 589, [163 Pac. 702].) This the contractor may require as a matter of protection to his own bondsmen as well as to himself and to the end that the work to be done by the subcontractor will be according to the plans, specifications, and conditions upon which the original contract was let and accepted.

[2] It is true that the rule is that a surety is favored in law, and that any act by the obligee which is injurious to his rights will operate as an exoneration of his obligations as such surety. (Civ. Code, sec. 2840, subd. 2; *Bateman Brothers* v. *Mapel,* 145 Cal. 241, [78 Pac. 734]; 3 Sutherland on Damages, 3d ed., sec. 735; *Dunne Inv. Co.* v. *Em-*

*pire State S. Co.*, 27 Cal. App. 208, 214, [50 Pac. 405].)
In other words, "a surety may stand upon the strict letter
of his bond and where the principal has, without the con-
sent of the surety, materially violated the terms of the
agreement for the performance of which the surety stands
sponsor, the latter is exonerated from all liability upon his
bond." (*Barrett-Hicks Co.* v. *Glas,* 9 Cal. App. 491, [99
Pac. 856].)   This rule is stated in section 2840, subdivision
2, and section 2819 of our Civil Code. The section first
named reads:

"A surety is exonerated—

"1. In like manner with a guarantor;

"2. To the extent to which he is prejudiced by any act of
the creditor which would naturally prove injurious to the
remedies of the surety or inconsistent with his rights, or
which lessens his security."

Section 2819 reads:

"A guarantor is exonerated, except so far as he may be
indemnified by the principal, if by any act of the creditor,
without the consent of the guarantor, the original obligation
of the principal is altered in any respect, or the remedies
or rights of the creditor against the principal, in respect
thereto, are in any way impaired or suspended."

[3] It may first be observed that if there were premature
payments made by Burr, the effect thereof would not neces-
sarily be to release the sureties from their entire obligation
as such but only from that part of the subcontractor's de-
fault that may be made up of such premature payments.
(*Siegel* v. *Hechler and Southwestern Ins. Co.*, 181 Cal. 187,
[183 Pac. 664].)   But we are unable to perceive from the
evidence where premature payments were made by the
plaintiff in this case. The subcontract provides that, "as
full compensation for all services rendered by said second
party under the terms hereof, the said second party shall
receive from said first party the sum of one and fifty one-
hundredths dollars for each unit of said mineral aggregate
sufficient to construct one concrete cubic yard. Said pay-
ment shall be made according to the estimates of the en-
gineers of said Highway Commission." The contract then
provides, as we have already shown, that "said payment
shall be made five days after said first party shall receive
from said Highway Commission his respective payments

according to the terms of said contract between said first party and said Highway Commission for deliveries of said mineral aggregate.''

It will be observed that the precise total amount to become due Keith could not be foretold or specified in the contract, for the reason that what that amount might be was contingent upon the amount of work that he performed under the contract. But it is undoubtedly true that what the contract intended to say with respect to the retention of the twenty-five per cent was that that percentage of the payments made from time to time as they became due by plaintiff to defendant should be retained. Of course, it cannot be said that that provision does not involve a vital element of the agreement, the arbitrary or unnecessary violation of which would have the effect of producing a material deviation from the contract, either *pro tanto,* amounting only to a departure therefrom, or *in toto,* amounting to an alteration thereof, according to the extent of such violation; yet, a contract such as we have here, founded as it is upon the statute, is supposed always to intend, as the statute clearly contemplates, that claims accruing against the contractor in the performance of the contract must be paid whenever they fall due and so become payable, whether prior or subsequent to the expiration of the thirty-five day period after the completion of the contract. Indeed, the contracts involved herein, as we have shown, contain in express language such a provision, and the provision is only in harmony with the proposition that those that become the creditors of a contractor under such a contract as we have here are not bound by the contract and cannot be compelled to postpone the enforcement of their claims beyond the time at which they may agree with the contractor that they shall be paid. [4] Of course, sureties upon a bond given for the proper execution of the terms of such a contract undertake their obligation with full knowledge of this proposition, and their obligation as such no less requires them to stand good for the faithful execution of the terms of the contract in that particular than for any other vital provision thereof. Therefore, where, as we think the uncontradicted testimony of the plaintiff shows to be so in this case, the payments made were according to the requirement of the contract as to when certain payments should be made and were within the

terms of the contract, and would consequently have to be
made at some time, either by Keith or the plaintiff or, to
the extent of their liability, by the sureties, we do not think
the payments so made are in fact premature within the fair
and reasonable contemplation of the statute and the con-
tract. [5] In other words since the contract expressly
provides that claims of the creditors must be paid when due
and payable, it cannot be held that, if such payments are
required to be made prior to the expiration of the thirty-
five days after the completion of the contract and it becomes
necessary for the contractor to pay them and it is impos-
sible, from the extent of such obligations, to retain the
twenty-five per cent provided by the contract, the payment
of them under such circumstances is such a violation of the
terms of the contract as to affect or change or impair the
rights of the sureties, either in whole or in part. (*Bate-
man Brothers* v. *Mapel,* 145 Cal. 241, 243, [78 Pac. 734];
*Hand Mfg. Co.* v. *Marks,* 36 Or. 523, [52 Pac. 512, 53 Pac.
1072, 59 Pac. 549]; *Siegel* v. *Hechler et al.,* 181 Cal. 187,
[183 Pac. 664], *supra.*)

The testimony respecting the payments by plaintiff and
the times at which they were made comes entirely from him,
and, while it is not altogether clear and satisfactory as to
the time and extent of all the payments made, it sufficiently
shows, we think, that payments or advancements made by
him on the contract prior to the completion of the work or
while it was in progress were not only within the terms of
the contract, but were in extinguishment, by actual payment
or by guaranteeing payment, of claims accruing against
Keith in the performance of the contract. His testimony
discloses this situation: That both the contract with the state
and the subcontract were practically completed about the
first day of December, 1915; that Keith, a short time prior
to the completion of the subcontract (it is not made to ap-
pear precisely how long before) abandoned it, and that
plaintiff, in pursuance of the stipulation to that effect in
said contract, himself took charge of the work and com-
pleted the contract; that, while Keith was still actually en-
gaged in the performance of the contract, it became neces-
sary, in order that the performance of the contract might
be proceeded with, for plaintiff to pay, and he did pay, cer-
tain claims arising against Keith in the performance of the

contract amounting to the sum of $911.36 in excess of the total sum which became due to Keith under his contract. The plaintiff filed and served a bill of particulars showing in detail or by items the sums aggregating the amount so paid, and the bill was introduced in evidence. This document upon its face shows that during the progress of the work, and long before the expiration of thirty-five days after the completion of the contract, a large number of bills were paid by plaintiff to Keith's creditors having claims of labor bestowed upon or materials and supplies furnished for use in the performance of the contract. The plaintiff, in giving this testimony, explained that, while some of the items set forth in the bill of particulars represented actual payments made by him to persons furnishing either labor or material or equipment necessary for the execution of the contract, there were other items incorporated therein that did not represent actual payments or advancements of money to Keith or his creditors but merely notations of instances where he had previously obligated himself to the payment of certain claims of persons which had been contracted by Keith in the performance of the contract. The plaintiff made an attempt, while testifying, to segregate and so point out the items representing actual payments and those representing his unexecuted personal obligations to pay to certain claimants money due from Keith for labor and materials furnished the latter for the performance of the contract, but the attempted segregation was not sufficiently specific and definite to make it clear how much of the aggregate amount of money so paid out by plaintiff was actually paid out or advanced prior to the completion of the contract, or how much of the amount due Keith, if any, he retained for a period of thirty-five days after the completion of the contract. As stated, the plaintiff testified that it was necessary for him to pay these claims or personally stand good for them in order that the work under the contract might be prosecuted and completed with the expedition required by the contract with the state. Plaintiff's testimony further shows that but for his payment of such of the claims as he did actually pay and the fact that he assumed personal liability for other claims, which, prior to the abandonment of the contract by Keith, became due and payable but not then paid, a serious delay in the completion of the contract

would have occurred. He further testified (and, as stated, nowhere is his testimony as to payments made by him contradicted) that claims against Keith, growing out of the contract, and aggregating the sum of $1,367.60, were not paid until after the completion by him of the contract. It does not appear from his testimony just how long after the completion of the contract some of said claims were paid, but it is thus made to appear that all said bills involved legitimate claims arising in the performance of the contract, being necessarily incurred in the proper execution of the terms thereof; and it likewise is further made to appear that some of said claims were not satisfied until after the lapse of a period of a year after the completion of the contract.

The sureties, as we have seen, bound themselves to stand for the faithful performance of the subcontract, not only according to its terms, but also according to the terms and conditions of the contract between plaintiff and the state. Time was of the essence of the latter contract. It had to be completed by the time designated therein and, as seen, default by the contractor (plaintiff) in so completing it meant the imposition upon him of a penalty of fifty dollars for each day of the period during which his contract remained uncompleted after the time specified for its completion. It was, therefore, a duty required of him by his contract with the state, and a duty which the sureties bound themselves to stand sponsor for, to see that the subcontract was not so delayed in its completion as to result in the delay of the completion of the state's contract beyond the appointed time; and if it became necessary, as it appears from the testimony to have become, to prevent delay in the completion of his contract with the state, that he should pay in full the claims against the subcontractor arising from the performance of the contract and which were due and payable when made, and prior to the expiration of the period of thirty-five days after the completion of said contract, such course was not only legally proper but was as much in the interest and to the benefit of the sureties as in his own interest and to his own benefit.

The conclusion following from the foregoing considerations is that the advancements made by the plaintiff for the purpose of paying legitimate claims growing out of the per-

formance of the contract by Keith; whensoever such claims
might have been paid, they all being within the terms of the
contract, and due and payable when so paid, were in sub-
stantial pursuance of the contracts involved herein and,
therefore, not at variance with the obligation undertaken by
the sureties that the subcontract should be performed accord-
ing to the terms and conditions of both contracts. It can-
not, therefore, properly be declared that such payments or
advancements constituted acts "which naturally prove in-
jurious to the remedies of the surety or inconsistent with
his rights, or which lessen his security."

The allegation of the complaint that the sureties entered
into their undertaking for a valuable consideration, while
not wholly sustained, was shown to be in part true. More-
over, it is a fair inference from the record that one of the
sureties was responsible, through his own voluntary act, for
the payment by plaintiff of one of the claims accruing
against Keith and arising out of the performance of the
subcontract, and also that the same surety was likewise re-
sponsible for delaying to some extent the completion of said
contract.

It was admitted by one of the sureties, Ames Vaughan,
that, during the progress of the work by Keith under the
subcontract, he received from Keith two motor-trucks
which the latter was using at the time in the performance
of the contract, and kept and used them for approximately
four weeks. Although Ames declared that one of the trucks
was turned over to him by Keith to secure a book account
which the latter had with the former, he (Ames) admitted
that he sold or traded in said truck for another, receiving
or being allowed therefor the sum of $500, which amounted
to $300 in excess of the total of said book account. He ad-
mitted, at the trial, that he still had that sum in his posses-
sion. He further admitted that the other truck was used
by him in transporting goods or merchandise from one point
to another, and that he derived therefrom considerable
revenue. The exact amount does not appear. The plaintiff
testified that the taking of these trucks from the work de-
layed the prosecution and completion thereof, and that he
so informed the sureties by letter, and requested a return
of the trucks to the possession of Keith so that he might the
better proceed with an expeditious execution of the terms of

his contract. A copy of the letter referred to was addressed to and received by each of the sureties and all said copies were introduced and received in evidence.

Said Vaughan further admitted that he authorized and gave his consent to the payment by plaintiff before the contract was completed of a claim against Keith for $457 arising out of the latter's performance of the contract.

It thus plainly appears that the sureties, all of whom are entitled to the benefit of any security for the performance of the principal obligation acquired by any one of his cosureties at any time after they have entered into the contract of suretyship (Civ. Code, sec. 2849), had in their possession some security, and it is further clear that some delay in the prosecution of the contract to completion was occasioned by the act of Ames Vaughan in taking and so causing to be withheld from use for several weeks in the work required to be done by Keith under the contract the motor-trucks referred to. Moreover, it will be observed that in permitting said Vaughan to remove the trucks referred to from the work required to be done under his contract Keith violated an express provision of said contract forbidding the removal of any equipment from said work until he should have performed the same or all the terms of said contract. But waiving all these matters, we repeat that for the other reasons hereinabove expressed there was not effected by the advancements or payments made by plaintiff under the subcontract, above considered, a departure therefrom and much less an alteration thereof within the purview of its provisions or the contemplation of the law regulating the performance of the terms of such agreements.

As to the defendant Keith it is to be remarked that his testimony in rebuttal of that of the plaintiff to the effect that he (Keith) was indebted to the plaintiff in the sum of $911.36 in excess of the total amount earned by Keith under the contract seems to be pregnant with an admission that he is indebted to plaintiff in some amount. When asked by his attorney whether he owed plaintiff the sum mentioned as a result of the subcontract, Keith replied: "No, sir, I don't think there was that due him." This was the only testimony offered by or received on behalf of the defendant upon that question, and it seems to us that his answer was tantamount to saying that while the precise amount stated

was not due plaintiff there was, nevertheless, some amount still owing to plaintiff and arising out of the contract in question. At any rate, the answer of the witness does not rise to the dignity of an absolute or positive denial of some indebtedness. It would follow that the plaintiff was entitled to recover some amount from Keith, unless Keith, at the time of the trial, had been discharged from his debts, including any that he might owe to Burr, through due proceedings in bankruptcy, as the court found was the fact. Thus we are led to the consideration of the finding of the court that the defendant Keith had been so discharged at the time of the trial.

It appears from the record that there was pending at the time that the present action was called for trial, another action between Burr as plaintiff and Keith as defendant, which action was numbered 7630. On the calling of this case for trial, counsel for defendants stated to the court that Keith had filed a petition in voluntary bankruptcy in the federal court for the northern district of California, to which counsel for plaintiff replied: "I understand in the petition he does not recognize Mr. Burr as a creditor." Mr. Jones, attorney for the defendants, then stated that he did not have the petition or a copy thereof in his possession and that if the plaintiff was not included in the schedule in the petition naming the creditors of Keith it was an oversight, whereupon counsel for the plaintiff said: "I suppose, as long as he is a bankrupt, a continuance is good." Thereupon the case of *Burr* v. *Keith,* No. 7630, was continued and the present case proceeded with. The trial of the present action commenced on the twenty-sixth day of October, 1917. The answer did not set up the alleged bankruptcy of Keith as a defense to this action. There was, therefore no issue upon that proposition submitted by the pleadings. It appears, however, that on May 13, 1918, long after the trial of this action was concluded and before findings were made and judgment rendered and entered, the defendants filed with the record of this action two certain papers, copies of which are incorporated into the record here. One of these papers purports to be an order of the United States district court for the northern district of California, made on the eleventh day of January, 1918, upon a petition previously filed by the defendant Keith to be adjudged a bank-

rupt, referring the matter to Richard Belcher, Esq., United States commissioner at the city of Marysville, for such proceedings therein as are required by the acts of Congress relating to bankruptcy. The other paper purports to be a copy of an adjudication by said United States district court that said Keith was a bankrupt and that he be discharged from all debts and claims which were made provable against his estate under the bankruptcy act which existed on the sixteenth day of October, 1917. These papers were not, as is manifest, regularly introduced in evidence in this case. It, however, appears to be the position of counsel for the defendants that, the certified record of the discharge of Keith from all debts and claims against his estate having been filed with the record in the case, although subsequent to the trial, the court below was authorized thereupon to take judicial notice of such discharge. As has been shown, at first there seemed to be some doubt in the minds of counsel whether the debt which Burr claimed was due him from Keith was included in the schedule of liabilities as set forth in the petition of Keith to be adjudged a bankrupt. Later on, however, and during the progress of the trial of this action, counsel for the defendants practically conceded that Burr's claim was not included in said schedule; but he argued that, while Burr's claim was not so included, he, nevertheless, had actual knowledge of the pendency of the petition of Keith before the latter was adjudged a bankrupt and discharged from his debts.

Section 17 of the Federal Bankruptcy Act, as it existed on the eleventh day of January, 1917, provided as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as . . . 3. Have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." (1 Fed. Stats. Ann., 2d ed., p. 708; U. S. Comp. Stats., sec. 9601.)

The counsel for the defendants declares that the failure to include the claim of Burr in the schedule of debts of Keith was due to the fact that Keith did not recognize himself as a debtor of Burr, or, in other words, that he did not consider that he was indebted to Burr in any sum whatsoever. There is no evidence in the record to support that

statement. [6] But, be that as it may, assuming, without deciding, that the court below was authorized to take judicial notice of the discharge in bankruptcy of Keith upon the record as it is presented here, and further assuming that it was true that Burr had actual knowledge of the filing of the petition of Keith to be declared a bankrupt prior to the time at which he was so adjudged and discharged from his indebtedness, the proposition remains that the court failed to find that Burr did have such actual knowledge, and, therefore, the mere finding that Keith was adjudged a bankrupt, considered in connection with the concession of counsel that Burr was not, as a matter of fact, included among the creditors of Keith in his petition, is wholly ineffectual for any purpose and in no manner or measure adds any support to the judgment in favor of the defendant Keith.

[7] We think that the plaintiff was entitled to some compensation for the Knox motor-truck which he let the defendant Keith have to be used in the work to be done under the subcontract. There is some discussion in the briefs as to whether the instrument whereby said truck was transferred to the possession of Keith involved a conditional sale or only a lease of the property. Our own opinion is that the transaction as evidenced by the written instrument constituted a conditional sale, also possessing, however, the characteristic of a lease. The intention of the vendor undoubtedly was that it should be a sale to Keith, and to protect his rights in the transaction Burr caused to be inserted in the agreement a provision to the effect that, in the event that the installments provided for in the agreement were not all paid, the possession of the property, the title to which remained in him at all times, should be returned to or taken by him, and that any installments which might in the meantime have been paid should be treated as rentals for the use of the truck. But, whatever the proper technical characterization or the legal nature of the instrument may be, it is certainly true that at least morally the plaintiff was entitled to compensation for the use of the truck, and we know of no reason why he should not be legally entitled to such compensation. While the right to retain the installments, should any have been paid, was in the nature of a forfeiture, we, nevertheless, think that, since there was

a breach of the agreement by the vendee in the. matter of the payment of the installments, the plaintiff is entitled to some compensation or damages for such breach, and that in such case the measure of compensation or damages is as is fixed by section 3311, subdivision 2, of the Civil Code. (See *Matteson* v. *Equitable Min. & Mill Co.*, 143 Cal. 436, 438, [77 Pac. 144].) In Ruling Case Law (volume 24, page 785) the rule is stated as follows: "Though the seller cannot after retaking possession maintain an action for the price he may treat the default of the buyer as a breach of the contract of purchase, and maintain an action for damages, as in case of the breach of other executory contracts of sale by a buyer."

In the footnotes of said volume, page 786, a number of cases are cited supporting the text. Of course, it is true, as the defendant, Keith, contends, that, in such a transaction, the vendor is not entitled to both the return of the property conditionally sold and the full price at which it was agreed to be sold. But it does not follow from that proposition that where, as here, there has been a violation by the vendee of the provision for the payment of installments, the vendee having used the property to his own advantage and benefit, the vendor should not be entitled to compensation by way of damages for the breach of the agreement.

For the reasons herein stated, the judgment is reversed and the cause remanded.

Finch, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 29, 1921, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied.

We think it proper to say, in addition to what is said by the district court in its discussion of the point last mentioned in its decision, that the compensation which Burr is entitled to recover of the sureties for the use of the truck in question is limited to the reasonable value of its use during the time Keith was actually using it in the performance of the sub-

contract, and that the rental agreed on in the contract between Burr and Keith for the sale of said truck is not the measure of the value of such use and is wholly immaterial to the inquiry. That contract was forfeited and in effect rescinded. The value of the use is to be ascertained in the same manner as if Burr had loaned Keith the truck for use in performing the subcontract in consideration of the payment by Keith to Burr of the reasonable value of its use.

All the Justices concurred.