Frank MARRONE, Appellant,

v.

STATE of Alaska, Appellee.

No. 1062.

Supreme Court of Alaska.

Sept. 17, 1969.

Frank Marrone, in pro. per.

Douglas B. Baily, Dist. Atty., and G. Kent Edwards, Atty. Gen., for appellee.

Before NESBETT, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ.

## OPINION

RABINOWITZ, Justice.

In 1959, Frank Marrone was found guilty of murder in the second degree and sentenced to 20-years' imprisonment.[1] Marrone then appealed to this court and was admitted to bail pending appeal.[2] While on bail appellant went to San Diego, California, and engaged in conduct which led to his conviction of the separate crimes of kidnapping for the purpose of obtaining ransom and conspiracy to commit the crime of kidnapping for the purpose of obtaining ransom. On April 26, 1961, appellant was sentenced by the Superior Court of the State of California, County of San Diego, to concurrent life sentences.

Prior to the entry of the April 26, 1961, California judgment and commitment, this court, in Marrone v. State,[3] had affirmed

1. Appellant was tried under an indictment which charged him with the first degree killing of one Don Ianetti. For a detailed account of the circumstances of this brutal homicide, see this court's opinion in Marrone v. State, 359 P.2d 969 (Alaska 1961).

2. Concurrent with the grant of bail, appellant was given permission to leave Alaska for the purpose of obtaining employment in Los Angeles, California. A condition of appellant's bail was that he remain in the Los Angeles area.

3. 359 P.2d 969 (Alaska 1961).

appellant's conviction of murder in the second degree. Our mandate issued on February 27, 1961. As a result of Marrone's failure to surrender himself to commence service of the 20-year sentence for second degree murder, the Superior Court of the State of Alaska, Third Judicial District, on March 31, 1961, issued a bench warrant for Marrone's arrest. Subsequent to the April 1961 entry of the California life sentences, the State of Alaska, on May 19, 1961, placed a detainer on appellant with the sheriff's office of San Diego County, California, requesting the sheriff's office to notify Alaska's authorities in the event of any "unforeseen release."

After serving seven years of the concurrent life sentences which were imposed by the California court, Marrone filed a petition in the Superior Court of the State of Alaska, Third Judicial District. In this petition, appellant sought an order requiring his return to Alaska in order that he be permitted to commence service of the 20-year sentence imposed by Alaska's superior court. Appellant's petition was denied and he now appeals from the superior court ruling. We affirm the superior court's denial of appellant's motion for an order requiring his return to Alaska.

From the record it is apparent that under Alaska law appellant has not as yet commenced service of the 20-year sentence he received for second degree murder.[4] The

prime motivation behind appellant's petition for an order requiring his return to Alaska from California appears to be a desire to take advantage of California's statutory "concurrency" provisions, as well as California's judicial precedents construing these same "concurrency" provisions. Section 669 of the California Penal Code is relevant here. By virtue of this statute, it is provided in part that:

When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be * * * Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently.[5]

---

4. AS 11.05.040(a) provides:
   When a person is sentenced to imprisonment, his term of confinement begins from the day of his sentence. A person who is sentenced shall receive credit toward service of his sentence for time spent in custody pending trial or sentencing, or appeal, if that detention was in connection with the offense for which sentence was imposed. *The time during which the person is voluntarily absent from the penitentiary, reformatory, jail, or from the custody of an officer after his sentence, shall not be estimated or counted as a part of the term for which he was sentenced.* (Emphasis added.)

5. A proviso contained in § 669 reads as follows:

[H]owever, if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term.
The foregoing proviso is controlling here, for § 209 of the California Penal Code establishes death or life imprisonment as the penalty for the crime of kidnapping for the purpose of obtaining ransom. Section 182 of the California Penal Code provides that the penalty for the crime of conspiracy to commit the crime of kidnapping for the purpose of obtaining ransom shall be the same as is called for by § 209 of the California Penal Code.

Of interest are several decisions of the California courts which have interpreted this statute. Judicial construction of the "concurrency" provisions of section 669 is first found in In re Stoliker.[6] There the California court directed that a state prisoner be turned over to federal authorities to commence service of a federal sentence in order to allow the prisoner concurrency benefits regarding his California sentence. This result was reached notwithstanding the fact that the federal judgment specifically provided that it was to run consecutively to any sentence imposed by any other court for any other offense.[7]

Two additional judicial precedents from California are of great significance. In re Tomlin[8] involved a factual situation where the State of Virginia had released Tomlin on parole and thereafter Tomlin was convicted for the commission of crimes in California by that state's courts. In order to accord Tomlin concurrency benefits, California sought to return him to Virginia so Tomlin could serve his Virginia sentence. Apparently the State of Virginia did not want to receive Tomlin until he had completed service of his California sentence. In this situation the California court recognized that the State of Virginia could not be forced to receive Tomlin. Thus, the Tomlin court said:

> The law of this state requires only that Tomlin be made available, it does not and cannot compel the Commonwealth of Virginia to take him.[9]

A similar result was reached by the Supreme Court of California in its decision in In re Patterson.[10] There petitioner Patterson was on parole from a Texas robbery sentence and was convicted in California of two counts of burglary. The California judgment provided that the sentences on the two California counts were to run consecutively to each other, but failed to indicate the relation of these sentences to the unexpired portion of the Texas sentence. Apparently, Texas' judicial precedent indicated that Texas would not credit Patterson with the time he served in California prisons. In light of these factors, the California Supreme Court entered the following order:

> It is ordered that the Director of Corrections notify the appropriate authorities of the State of Texas that they may take custody of petitioner, and if custody is so taken, that the Director of Corrections designate a penal institution of that state as the place of confinement for the purpose of execution of the California judgments of conviction. *It is further ordered that if, after notification, the authorities of the State of Texas decline to take custody of petitioner, or if they consent to credit petitioner with time served in California penal institutions in execution of his prior Texas sentence, this order be deemed to have been fully executed.*[11] (Emphasis added.)

*Tomlin* and *Patterson* mark the outer limits of the *Stoliker* rule, for *Tomlin* and *Patterson* recognize that a coequal sovereign of the State of California cannot be compelled to take back a California prisoner in order to effectuate California's "concurrency" policies. *Patterson* also recognizes that any order entered by a California court to carry out the concurrency policies of that state is fulfilled if the authorities of the sister state decline, after notification, to take custody of the prisoner. Thus, it is clear that the courts of the State of California cannot force the State

6. 49 Cal.2d 75, 315 P.2d 12 (1957).

7. The *Stoliker* rule has been followed in In re Satterfield, 64 Cal.2d 419, 50 Cal. Rptr. 284, 412 P.2d 540 (1966); In re Cain, 243 Cal.App.2d 768, 52 Cal.Rptr. 860 (1966); People v. Massey, 196 Cal. App.2d 230, 16 Cal.Rptr. 402 (1961).

8. 241 Cal.App.2d 668, 50 Cal.Rptr. 805 (1966).

9. *Id.*, 50 Cal.Rptr. at 805.

10. 64 Cal.2d 357, 49 Cal.Rptr. 801, 411 P.2d 897 (1966).

11. *Id.*, 49 Cal.Rptr. at 805, 411 P.2d at 901.

of Alaska to take Marrone back so that he can commence service of his 20-year Alaskan sentence, and at the same time obtain the advantage of California's concurrency policy in regard to service of the two concurrent life sentences which were imposed by the California court. We also note that there is no indication in the record we have before us that appellant has ever moved in the California courts for relief similar to that which was requested by the petitioner in In re Patterson.[12] In short, we have no knowledge that any appropriate executive authorities of the State of Alaska have been presented with, and acted upon, any order regarding appellant similar to that which was entered by the Supreme Court of California in the *Patterson* case. This fact indicates that appellant has chosen not to seek relief in the courts of California but is in essence asking the courts of this state to effectuate his extradition to Alaska. All of which leads us in turn to the principal rationale of our decision that the superior court was correct in denying appellant's application for an order requiring his return to Alaska. For we hold that the request for an issuance of a requisition for extradition by the chief executive officer of the State of Alaska is purely an executive function, the exercise of which will not be interfered with by the judicial branch of Alaska's government. We reach this conclusion from analysis of the applicable statutory provisions pertaining to extradition and relevant judicial precedent.

Regarding extradition, the Constitution of the United States provides in article IV, section 2, clause 2, that:

A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.[13]

In addition to the foregoing, both Alaska and California have enacted the Uniform Criminal Extradition Act.[14] Several sections of the Uniform Criminal Extradition Act are also pertinent here. AS 12.70.040 (a) of Alaska's act provides:

When it is desired to have returned to this state a person charged in this state with a crime, and that person is imprisoned or is held under criminal proceedings then pending against him in another state, the governor of this state may agree with the executive authority of the other state for the extradition of that person before the conclusion of the proceedings or his term of sentence in the other state, upon condition that the person be returned to the other state at the expense of this state as soon as the prosecution in this state is terminated.

Of particular relevance is AS 12.70.220 (b) of the Uniform Criminal Extradition Act, which reads as follows:

When the return to this state is required of a person who has been convicted of a crime in this state and has escaped from confinement or broken the terms of his bail, probation, or parole, the prosecuting attorney of the judicial district in which the offense was committed, or the attorney general, the parole or probation authority having jurisdiction over him, or the commissioner of the Department of Health and Welfare shall present to the governor a written application for a requisition for the return of that person. In the application there shall be stated the name of the person, the crime for which he was convicted, the circumstances of his escape from confinement or of the breach of the terms of his bail, probation, or parole, and the state in which he is believed to be, including the location of the person therein at the time the application is made.

Under this section the only officials of the State of Alaska who are authorized to

---

12. *Id.*

13. This constitutional provision is enforced by 18 U.S.C. § 3182.

14. AS 12.70.010 through AS 12.70.290; California Penal Code § 1548 et seq.

present an application for a requisition for the return of Marrone are the prosecuting attorney of the judicial district in which the offense was committed, the Commissioner of Health and Welfare, the Attorney General, or the parole or probation authority having jurisdiction over him.[15] No authority is granted to any court or judicial officer thereof to request a requisition for Marrone's return. This limitation illustrates the basis for our conclusion that the superior court properly refused to enter an order requiring Marrone's return to the State of Alaska. For as we read the entire text of the Uniform Criminal Extradition Act and the judicial decisions regarding the question, it is clear that the matter of making a request for and the issuance of an extradition requisition by the Governor of Alaska is a discretionary executive function and will not be interfered with by the courts.[16]

An apposite case here is Burd v. Commonwealth[17] where appellant (a bail bondsman) contended that the state had failed to invoke extradition proceedings to procure the prisoner for trial and, in consequence was estopped to assert any right to the proceeds of the bail bond. In rejecting this contention, the court said:

The power to extradite is lodged in the governor of this state. * * * Neither

the language of the * * * Federal constitutional provision nor of any act of Congress, nor the terms and conditions of our extradition law, require the chief executive of this state to make demand upon the executive authority of another state for the arrest and return of a fugitive from justice. The governor alone decides either for extradition or against it, and when he decides either for or against it, that settles the matter, and from his decision there is no appeal. See Scott on Interstate Rendition, sec, 46, p. 62.[18]

One other aspect of this appeal should be mentioned. Appellant has advanced a one-line argument regarding the cruel and unusual punishment. His entire contention is as follows:

It constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution for the state of Alaska to run a sentence consecutively with a second state's sentence, when Alaska had former jurisdiction.

We note that our legislature has specifically authorized the imposition of consecutive sentences.[19] In Green v. State,[20] re-

---

15. Marrone comes within this section as a person who has been convicted of a crime in this state and has broken the terms of his bail.

16. Under a section similar to AS 12.70.-040(a), the Supreme Court of Ohio in State ex rel. Corbett v. Common Pleas Court, 168 Ohio St. 468, 155 N.E.2d 923, 924 (1959), said: "The matter of issuing an extradition requisition by the Governor of Ohio is an executive function, discretionary with him, and the exercise thereof will not be interfered with by the courts."
Study of the Uniform Criminal Extradition Act as enacted in Alaska discloses that executive discretion is provided for at various stages throughout the act. AS 12.70.040(a) provides that "the governor of this state may agree"; AS 12.70.040(b) that the "governor * * * may * * * surrender"; AS 12.70.050 that the "governor of this state may also surrender"; AS 12.70.060 that "[i]f the

governor decides that the demand should be complied with"; AS 12.70.180 that the "governor, in his discretion, either may surrender him on demand"; AS 12.70.-200 that "[t]he governor may recall his warrant of arrest, or may issue another warrant * * *." *See also* AS 12.70.-210.

17. 335 S.W.2d 945 (Ky.1960).

18. *Id.* at 949. *See also* Kentucky v. Dennison, 65 U.S. (24 How.) 66, 109–110, 16 L.Ed. 717, 730 (1861); Application of Middlebrooks, 88 F.Supp. 943 (S.D. Cal.1950), rev'd Ross v. Middlebrooks, 188 F.2d 308 (9th Cir. 1951), cert. denied, 342 U.S. 862, 72 S.Ct. 90, 96 L.Ed. 649 (1951).

19. See AS 11.05.050 which reads as follows:
If the defendant is convicted of two or more crimes, before judgment on ei-

garding cruel and unusual punishment standard, we said:

> Only those punishments which are cruel and unusual in the sense that they are inhuman and barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice may be stricken as violating the due process clauses of the state and federal constitutions. Such punishments would also be void under article I, section 12 of the Alaska Constitution which declares that cruel and unusual punishments shall not be inflicted.[21]

▉ Viewed as a single offense, we find no basis for concluding that a 20-year sentence for second degree murder constitutes cruel and unusual punishment.[22] Further, it is well established that a state court may make its sentence run consecutively to one imposed by the courts of a sister state or the federal courts. It has also been held that a federal court may sentence consecutively to a state sentence.[23]

The superior court's denial of appellant's motion for an order requiring his return to Alaska is affirmed.[24]

BONEY, J., not participating.

---

ther, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment of any other of the crimes. If the defendant is imprisoned upon a previous judgment on a conviction for a crime, the judgment may be that the imprisonment commences at the expiration of the term limited by the previous judgment.

20. 390 P.2d 433 (Alaska 1964).

21. *Id.* at 435. *Compare* Faulkner v. State, 445 P.2d 815 (Alaska 1968).

22. *See* Marrone v. State, 359 P.2d 969 (Alaska 1961), for insight into the factual circumstances surrounding appellant's conviction.

23. Lavoie v. United States, 310 F.2d 117 (1st Cir. 1962); Werntz v. Looney, 208 F.2d 102 (10th Cir. 1953); People ex rel. McCarthy v. Ragen, 389 Ill. 172, 58 N.E.2d 872 (1945).

24. See generally on the problems of sentencing for multiple offenses committed in different states, ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, 181–186 (Approved Draft, 1968); Advisory Counsel of Judges of the National Council on Crime and Delinquency, Model Sentencing Act, art. V (1963).