James Lee **HARRIS**, Petitioner,

v.

Thomas R. **ISRAEL**, Respondent.

Civ. A. No. 76–C–736.

United States District Court,
E. D. Wisconsin.

June 3, 1981.

---

James Lee Harris, pro se.

Bronson C. LaFollette, Atty. Gen. of Wisconsin and Pamela Magee-Heilprin, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a habeas corpus action brought by James Lee Harris, an inmate of the Wisconsin State Prison at Waupun, Wisconsin. The court has jurisdiction over the action pursuant to 28 U.S.C. § 2254.

In 1973, petitioner was convicted of first degree murder, in violation of § 940.01 of the Wisconsin Statutes. The conviction arose out of an attempted armed robbery of a supermarket, during the course of which petitioner shot and killed a store employee.

Petitioner did not deny firing the fatal shot but claimed that he only meant to strike the victim on the side of the head with his gun as he was making his exit. Petitioner denied that he intended to fire the gun or kill the victim.

Petitioner's claim of constitutional error rests on the instructions regarding intent, which instructions were read to the jury. In particular, petitioner claims that Wisconsin Jury Instruction—Criminal No. 1100 unconstitutionally shifted the burden of proof on the issue of intent to the defendant.

The portion of the jury instruction challenged by petitioner reads as follows:

"The intention to kill, which is an essential element of Murder in the First Degree, is no more or less than the mental purpose to take a human life formed on the instant preceding the fatal act or sometime theretofore, it being sufficient that there was a precedent existence of the purpose and persistency of it to and inclusive of such fatal act.

"While this intent to kill must be found as a fact before you can find the defendant guilty of Murder in the First Degree, it must be found, if found at all, from his acts and his words and statement, if any, bearing upon his intent. You cannot look in a man's mind to find out his intent. That you must determine from his acts and his words and statements, if any, bearing upon his intent. *When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts.*

"*When one person assaults another violently with a dangerous weapon, likely to kill, and the person thus assaulted dies, therefrom, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that death was intended, and such killing would be Murder in the First Degree.*" (Emphasis added.) (Tr. at 6.)

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court held that an instruction which provided that "'[t]he law presumes that a person intends the ordinary consequences of his voluntary acts,'" could have been interpreted by the jury as shifting the burden of proof on the issue of intent from the prosecution to the defendant. Such an interpretation would violate the constitutional principle that due process requires that in a criminal case the prosecution prove every element of the crime charged beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In *Dreske v. Wisconsin Department of Health and Social Services*, D.C., 483 F.Supp. 783, 787 (1980), this Court held that a Wisconsin jury instruction providing that "'[w]hen there are no circumstances to rebut the presumption, the law presumes that a person intends all of the natural, probable, and usual consequences of his deliberate acts'" suffered from the same infirmity as the instruction struck down in *Sandstrom*. Respondent urges the Court to reconsider that holding. In the alternative, respondent argues that *Sandstrom* should not be applied retroactively and that use of the challenged instruction constitutes harmless error.

■ In *Sandstrom*, the Supreme Court identified four types of presumptions. The strongest presumption is the conclusive presumption. With a conclusive presumption, since the antecedent facts have been established, the jury is required to find the presumed fact regardless of evidence to the contrary. A conclusive presumption is irrebuttable.

■ There is a second type of presumption which acts to shift the burden of proof. With this type of presumption, once the jury has found the existence of the antecedent facts, it must find the presumed fact unless enough evidence is produced to establish the contrary.

■ The third type of presumption acts merely to shift the burden of production. Here the jury must find the presumed fact

only if *no* evidence has been produced that would establish the contrary. This is the so-called "bursting bubble" presumption.

■ Finally, the weakest presumption is the permissive inference. This is not really a presumption at all but an instruction informing the jury that it *may* find the existence of the presumed fact once the antecedent facts have been established but that it is not required to do so.

The instruction at issue in *Sandstrom* was invalidated because the jury could have come to the conclusion that it created either a conclusive presumption or a presumption that shifted the burden of proof. The instruction in the instant case is identical to the *Sandstrom* instruction except that it is preceded by the phrase "[w]hen there are no circumstances to prevent or rebut the presumption * * *." Wisconsin Jury Instructions—Criminal No. 1100. It was correctly pointed out by the Wisconsin Supreme Court in *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980), that this phrase eliminates the possibility that the jury could have interpreted the presumption as conclusive since they are explicitly instructed that the presumption may be rebutted.

■ This Court is convinced, however, that there remains the possibility that the jury concluded that the presumption required the defendant to prove that he did not intend the natural consequences of his acts, thereby unconstitutionally shifting the burden of proof. The Court in *Muller* discounted this possibility by focusing on the phrase "*no* circumstances." According to the *Muller* court, that phrase should have made it clear to the jury that the defendant was only required to submit "some" evidence to avoid the presumption and that the burden of proof remained at all times with the prosecution.

This is indeed a subtle notion. While one schooled in the fine distinctions of the law may appreciate the idea of a presumption which is countered by the production of evidence that does not persuade one to the contrary, the idea is foreign to the layman. The usual and customary meaning of the term "rebut" is "to contradict * * * by countervailing proof." Webster's New Collegiate Dictionary at 714 (1970). A proposition is generally not thought to have been rebutted until it has been shown that it is more likely than not that the contrary is true. Thus, there is at least the possibility that the jury interpreted the instruction at issue as requiring them to find intent unless the defendant persuaded them to the contrary. Under *Sandstrom*, the mere possibility that the instruction could be so interpreted is enough to invalidate the instruction.

The intent instruction challenged in this action so closely parallels the instruction struck down in *Sandstrom* that any attempt to distinguish the two can amount to little more than semantic legerdemain. The same constitutional defect that was present in *Sandstrom* is present in the instant case. Accordingly, this Court's decision in *Dreske* must stand.

■ This Court is also convinced that *Sandstrom* must be applied retroactively. In *Ivan v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), the United States Supreme Court addressed the issue of whether *In re Winship*, supra, holding that the reasonable doubt standard was to be applied to juvenile proceedings, was to be applied retroactively. The Court stated 407 U.S. at 204–205, 92 S.Ct. at 1952:

> " 'Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed, to require prospective application in these circumstances.' *Williams v. United States*, 401 U.S. 646, 653 [91 S.Ct. 1148, 1152, 28 L.Ed.2d 388] (1971). See *Adams v. Illinois*, 405 U.S. 278, 280 [92 S.Ct. 916, 918, 31 L.Ed.2d 202] (1972); *Roberts v. Rus-*

*sell*, 392 U.S. 293, 295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968).

"*Winship* expressly held that the reasonable-doubt standard is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law' . . . . 'Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.' To this end the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" 397 U.S., at 363–364 [90 S.Ct. at 1072].

"Plainly, then, the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function, and *Winship* is thus to be given complete retroactive effect. * * * *"

Similarly, in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the Court held that *Mullaney v. Wilbur*, supra, which invalidated a jury instruction that an intentional homicide is presumed to be unlawful, should be applied retroactively. Again the Court held that a procedural device which has the effect of shifting the burden of proof to the defendant so taints the truth-finding function of a criminal trial that any conviction so obtained must be set aside. In these circumstances, factors such as prior reliance by state and federal authorities and the effect on the administration of justice are subsumed by the interest in maintaining the integrity of the criminal factfinding process.

*Sandstrom*, like *Winship* and *Mullaney*, struck down a procedural device which had the effect of permitting convictions on evidence that did not satisfy the beyond a reasonable doubt standard. A procedure which allows the jury to find the existence of an essential element of a crime without meeting the constitutional standard of certainty throws great doubt on the accuracy of the verdicts so obtained. When the truth-finding function is so impaired, the courts are required to apply the necessary remedy retroactively. Accordingly, any person convicted of a crime on the basis of the Wisconsin instruction on intent challenged here is entitled to review of the conviction so obtained.

This is not to say that in many cases the use of such instruction will not constitute harmless error. In those cases where specific intent was never at issue or where proof of such intent was overwhelming, judicial relief will not be appropriate. In this case, however, the Court cannot say that the error was harmless.

■ Respondent advances two theories of harmless error. First, it is argued that the general instructions on burden of proof and the presumption of innocence cured the erroneous instruction. The United States Supreme Court considered and rejected a similar argument in *Sandstrom*. After determining that the instruction at issue could have been interpreted by the jury as either a conclusive or burden shifting presumption, the Court stated:

"The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. * * * But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proved beyond a reasonable doubt, proof of the voluntary

slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt. * * * " 442 U.S., at 518–519, n. 7, 99 S.Ct., at 2456.

While the respondent raises the possibility of curative instructions as constituting harmless error rather than affecting the jury's interpretation of the intent instruction, the Supreme Court's observations on the subject are entirely applicable. There is no inconsistency between an instruction that the defendant must be proved guilty beyond a reasonable doubt and the intent instruction challenged here. The jury may simply assume that the presumption that a person intends the natural consequences of his voluntary acts is a means by which guilt beyond a reasonable doubt may be established. This possibility militates against a finding of harmless error.

■ Respondent also argues that the Court should find harmless error in light of the overwhelming evidence that petitioner intended to take the life of his victim. Nonetheless, the Court can only find harmless error where the State proves beyond a reasonable doubt that the error in question did not influence the jury's verdict. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In this case, virtually the only issue at trial was whether petitioner intended to cause the death of the deceased. The respondent has pointed to no objective evidence of intent other than petitioner's acts themselves. While the jury was free to infer intent from petitioner's acts, the Court cannot say that there is no possibility that the jury did not instead rely on the challenged presumption. Since petitioner's state of mind was so hotly disputed at trial, the possibility that the jury relied on the presumption prevents a finding of harmless error.

IT IS THEREFORE ORDERED that the petition of James Lee Harris for a writ of habeas corpus is granted.

IT IS FURTHER ORDERED that this decision and order be stayed for ninety days from the date of its filing in order to afford the State of Wisconsin an opportunity to retry petitioner or, in the alternative, if an appeal is taken, that this decision and order be stayed pending appeal.