**Frank MARRONE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5368.**

Court of Appeals of Alaska.

Nov. 5, 1982.

Frank Marrone, pro se, James D. Oswald, Mary E. Greene, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

Michael J. Stark, Asst. Atty. Gen., Anchorage, Daniel W. Hickey, Chief Prosecutor, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

In 1959, Frank Marrone was convicted of second degree murder. His conviction was affirmed on appeal. *Marrone v. State,* 359 P.2d 969 (Alaska 1961) (*Marrone* I). Thereafter, Marrone filed two applications for post-conviction relief. Judgments denying relief were affirmed respectively in *Marrone v. State,* 458 P.2d 736 (Alaska) (*Marrone* II), *cert. denied,* 397 U.S. 967, 90 S.Ct. 1005, 25 L.Ed.2d 260 (1969), and *Marrone v. State,* 581 P.2d 674 (Alaska 1978) (*Marrone* III). Marrone brought this third application for relief arguing: (1) that the trial court improperly instructed the jury, (2) that the trial court erred in failing to record and transcribe the reading of the jury instructions, 28 U.S.C. § 753(b) (1976), and, (3) that Marrone is currently treated as within state parole jurisdiction when he should be subject to federal parole supervision. The trial court denied relief and Marrone appeals. We find no error and affirm.

The facts are set out at some length in *Marrone* I. Briefly, Marrone was charged with the murder of Don Iannetti. Iannetti's body was found in a bar which Iannetti owned. The state found no eyewitnesses to the shooting. Circumstantial evidence introduced by the state tended to show that Marrone had a motive and an opportunity to kill Iannetti. Marrone did not testify. His evidence tended to establish an alibi. There was evidence that Iannetti frequently used the murder weapon, which he owned, in target practice at the bar. In addition, Marrone offered evidence that Iannetti was intoxicated at the time of his death and habitually became violent when he was intoxicated. Marrone justified this offer of evidence by arguing that while his defense was alibi, the jury might reject this defense and conclude that Marrone was present when Iannetti died and, if so, might conclude that the gun went off during a struggle or was fired on sudden impulse. The trial court rejected this evidence on grounds of relevancy and the ruling was affirmed on appeal. The supreme court specifically held that alibi was the only defense with support in the evidence and that Marrone did not rely on self-defense or justification at trial, *i.e.*, had not presented sufficient evidence to entitle him to put Iannetti's character for violence in issue. *Marrone* I, 359 P.2d at 984.

Marrone's case was tried in the federal district court which had been established by Congress to try criminal cases arising while Alaska made the transition from territory to state and established its own courts. Marrone initially appealed to the Ninth Circuit Court of Appeals but by that time the state supreme court had been established so the Ninth Circuit dismissed Marrone's appeal for lack of jurisdiction. He refiled in the state appellate court where his appeal was heard.

We will deal with Marrone's contentions in order.

## JURY INSTRUCTION

Marrone argues that the following instruction which was given without objection violated his constitutional rights:

In every crime, such as charged in this case, there must exist a union or joint operation of act and intent. The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt.

The law presumes that a person intends the ordinary, natural and probable consequences of his voluntary acts. This is a disputable presumption and may be overcome by evidence to the contrary. If you should find that the defendant killed Don Iannetti, then in determining the question of intent it is important that you consider the means by which the killing was accomplished. If you should find that he used a deadly weapon without excuse or provocation and in such a manner as to imperil life, such facts would support an inference of felonious intent, an inference which, however, must be weighed against any contradictory evidence. If and when the evidence shows that one person assailed another violently with a dangerous weapon in a manner likely to cause the death of the person assailed and which in fact did kill the person thus attacked, such evidence gives rise to a presumption that the assailant intended death or other great bodily harm.

The presumption, however, may be overcome by contrary evidence; and any such evidence is sufficient to overcome it which creates in the minds of the jurors a reasonable doubt that the defendant's intent was as so presumed. *In the absence of evidence to the contrary, the presumption must prevail.* [Emphasis added.]

Marrone relies upon *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Menard v. State,* 578 P.2d 966, 968–69 (Alaska 1978).

■ Having reviewed the record and the briefs, we have concluded that Marrone's failure to object to this instruction during

his trial forfeits his right to challenge it in a post-conviction proceeding.

█ We view this result as consistent with Alaska Rule of Criminal Procedure 35(j). We do not believe that an appellant should be able to raise issues on an appeal from the denial of his application for post-conviction relief that he would have been barred from raising on a direct appeal from his original conviction. *Cf. Hensel v. State,* 604 P.2d 222, 235 n. 55 (Alaska 1979) (illogical to require state to bear a greater burden in resisting a motion for new trial in collateral proceedings under Rule 35 than it would bear in direct proceedings under Rule 33).[1] We base our conclusion that Marrone has not justified relief from forfeiture on the following grounds: First, the challenged instruction (the *Marrone* instruction), is distinguishable from the instruction given in *Menard,* (the *Menard* instruction), and the instruction given in *Sandstrom,* (the *Sandstrom* instruction). Therefore, use of the *Marrone* instruction in 1959 was not plain error. Second, *Sandstrom* and *Menard* were sufficiently foreshadowed in *Morrissette v. United States,* 342 U.S. 246, 274–76, 72 S.Ct. 240, 255–56, 96 L.Ed. 288, 306–08 (1952) and *Bloch v. United States,* 221 F.2d 786 (9th Cir.1955). Therefore, the *Sandstrom* and *Menard* holdings cannot be termed a significant change in the law, Alaska Rule of Criminal Procedure 35(c)(7), excusing a timely failure to object. *Cf. Thompson v. State,* 496 P.2d 651, 655–56 (Alaska 1972) (recent case articulating principle favorable to defendant does not excuse prior failure to raise issue in post-conviction proceedings where the principle is found in cases decided prior to earlier post-conviction proceedings). Finally, Marrone has not shown either good cause for failing to object or substantial prejudice. He therefore has no claim under federal law.

*United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Engle v. Isaac,* —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

When Marrone was tried in 1959 the Federal Rules of Criminal Procedure governed his trial. *Marrone v. State,* 359 P.2d 969, 979 n. 10 (Alaska 1961). At that time Federal Rule of Criminal Procedure 30 provided in part:

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

As previously mentioned, Marrone did not object to the challenged instruction at trial. Nevertheless, Federal Rule of Criminal Procedure 52(b) provided in 1959 that:

> Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

█ The United States Supreme Court, in *United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), held that the provision in Rule 52 permitting appellate courts to notice plain error does not apply to post-conviction relief. We find that Marrone has not shown plain error as that phrase is understood in current Alaska law. Therefore it is not necessary for us to determine whether the federal rule requiring more than plain error applies in Alaska in interpreting the Federal Rules of Criminal Procedure, which were applicable in Alaska prior to statehood, or in interpreting current Criminal Rule 52, which is patterned on the federal rules. Plain error has two components. The first describes the nature of the error and the second, the quantum of resulting prejudice. Marrone must therefore show: (1) that giving the

---

1. We note that Alaska Rule of Criminal Procedure 35(j) is based upon § 8 of the Uniform Post-Conviction Procedure Act (1966). The provision in the uniform act has been interpreted to limit the "waiver" standard to those rights which require an "intelligent and knowing" waiver before they can be lost. *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (Md.1978).

Consequently, applying forfeiture standards based on Federal Rule of Criminal Procedure 30 is not inconsistent with Alaska Rule of Criminal Procedure 35(j). The distinction between waiver and forfeiture is discussed in *Lemon v. State,* 654 P.2d 277 (Alaska App., October 29, 1982).

questioned instruction constituted an obvious error or defect in the proceedings and, (2) that the error substantially affected his right to a fair trial, *i.e.,* was obviously prejudicial. *See Crutchfield v. State,* 627 P.2d 196, 198 (Alaska 1980) (footnotes and citations omitted; emphasis supplied) where the court said:

It is well settled that Alaska Criminal Rule 47(b) allows this court to 'consider ·questions raised for the first time on appeal if necessary to effect substantial justice or prevent the denial of fundamental rights.' But, an alleged error is reviewable as plain error only if it raises a substantial and important question *and is obviously prejudicial.* Furthermore, in *Gilbert v. State,* 598 P.2d 87, 92 (Alaska 1979), we emphasized that the requirement of obvious prejudice, *i.e., that the alleged defect be readily apparent,* applies not just to non-constitutional issues but to those of constitutional dimension as well.

Thus, we conclude that if reasonable judges, aware of applicable constitutional provisions, statutes, court rules, and binding appellate authority, would differ regarding the propriety of giving a particular instruction to the jury at the time given, its use is not plain error. Conversely, if the law is settled in defendant's favor, *i.e.,* existing authority unequivocally precludes the giving of an instruction and the defendant suffers substantial prejudice as a result, it is plain error to give it. With this test in mind we evaluate Marrone's arguments.

Marrone argues that the *Marrone* instruction is indistinguishable in effect from the *Sandstrom* and *Menard* instructions and was therefore implicitly condemned in *Morrissette* and *Bloch,* making its use in 1959 plain error. In evaluating Marrone's argument, it is useful to consider the United States Supreme Court's treatment of presumptions. That court has found two possible defects in a presumption against the accused in a criminal case. *See County Court v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979): (1) the nexus between the fact proved and the fact to be

presumed may be so insubstantial as to violate due process. *See Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) (must be a rational connection between the two to withstand a due process challenge), and (2) the presumption may undermine the government's duty to prove guilt beyond a reasonable doubt. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Marrone has not challenged the presumption in issue on the first ground and we therefore do not reach it here. His challenge is solely on the ground that the presumption in the instruction questioned undermined the state's burden of proof.

Presumptions, as they appear in criminal jury instructions, may be divided into four types:

(1) Conclusive presumptions that require the jury to find a presumed fact from the basic facts;

(2) Presumptions that shift to the defendant the burden of persuading the jury, by a preponderance of the evidence (or a higher standard), that the presumed fact does not exist;

(3) Presumptions that shift to the defendant the burden of producing some evidence tending to contradict the presumed fact; and

(4) Permissive inferences that merely allow the jury to find the presumed fact from evidence of the basic fact.

Marrone proceeds on the assumption that the instructions condemned in *Sandstrom* and *Menard* (the *Mann* instruction, *Mann v. United States,* 319 F.2d 404 (5th Cir.1963)) and the *Marrone* instruction are in all material respects identical. In fact, they are substantially different. The *Sandstrom* instruction told the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The jury was not expressly told that the presumption was "rebuttable" nor was it informed of the quantum of evidence necessary to rebut the presumption. A *Sandstrom*-type instruction which is capable of being interpreted as conclusive was held to be plain error by the Ninth Circuit as early

as 1955 in *Bloch v. United States,* and was arguably precluded by *Morrissette v. United States.* At least Marrone's trial counsel was able to successfully argue this position to the Ninth Circuit in early 1959. *See Chappell v. United States,* 270 F.2d 274, 279–80 (9th Cir.1959). *Chappell* was pending before the Ninth Circuit at the time Marrone's case was tried.

The *Mann* instruction was drafted by the Honorable William C. Mathes, a United States District Court Judge for the southern district of California, to cope with the problems noted in *Bloch* and *Morrissette.* It first appeared in print with Mathes' suggested forms for use in criminal cases, 20 F.R.D. 231, 264–65 (1958) and was reprinted in Mathes, *Jury Instructions and Forms for Federal Criminal Cases,* 27 F.R.D. 39, 78–79 (1961). Its later history is detailed in *United States v. Chiantese,* 560 F.2d 1244 (5th Cir.1977), cert denied, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).

The *Mann* instruction differs from the *Sandstrom* instruction in clearly telling the jury that it is rebuttable ("so unless the contrary appears from the evidence") but it does not indicate the quantum of evidence necessary to rebut. It is thus open to the interpretation that it shifts the burden of persuasion, *i.e.,* proof by a preponderance of the evidence, to the defendant on a necessary element of the offense (intent). This is especially so where the crime charged requires specific intent. Such a shifting of the burden of persuasion on an element of the crime violates *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). As the court noted in *Harris v. Israel,* 515 F.Supp. 568, 571 (E.D.Wisc.1981):

> The instruction at issue in *Sandstrom* was invalidated because the jury could have come to the conclusion that it created either a conclusive presumption or a presumption that shifted the burden of proof. The instruction in the instant case is identical to the *Sandstrom* instruction except that it is preceded by the phrase '[w]hen there are no circumstances to prevent or rebut the presumption ....' [T]his phrase eliminates the possibility that the jury could have interpreted the

presumption as conclusive since they are explicitly instructed that the presumption may be rebutted.

This Court is convinced, however, that there remains the possibility that the jury concluded that the presumption required the defendant to prove that he did not intend the natural consequences of his acts, thereby unconstitutionally shifting the burden of proof. The court in *Muller* [a Wisconsin Supreme Court decision] discounted this possibility by focusing on the phrase '*no* circumstances.' According to the *Muller* court, that phrase should have made it clear to the jury that the defendant was only required to submit 'some' evidence to avoid the presumption and that the burden of proof remained at all times with the prosecution.

This is indeed a subtle notion. While one schooled in the fine distinctions of the law may appreciate the idea of a presumption which is countered by the production of evidence that does not persuade one to the contrary, the idea is foreign to the layman. The usual and customary meaning of the term 'rebut' is 'to contradict ... by countervailing proof.' Webster's New Collegiate Dictionary at 714 (1970). A proposition is generally not thought to have been rebutted until it has been shown that it is more likely than not that the contrary is true. Thus, there is at least the possibility that the jury interpreted the instruction at issue as requiring them to find intent unless the defendant persuaded them to the contrary. Under *Sandstrom,* the mere possibility that the instruction could be so interpreted is enough to invalidate the instruction.

The *Marrone* instruction meets this objection by specifying the quantum of evidence necessary to rebut, *i.e.,* some evidence. It reads in part:

> The presumption, however, may be overcome by contrary evidence; and any such evidence is sufficient to overcome it which creates in the minds of the jurors a reasonable doubt that the defendant's intent was as so presumed. In the absence

of evidence to the contrary, the presumption must prevail.

This instruction appears to be based on California cases. *See, e.g., People v. Cornett,* 93 Cal.App.2d 744, 209 P.2d 647, 649–50 (1949) (where a substantially identical instruction was given and approved) (citing *People v. Besold,* 154 Cal. 363, 97 P. 871, 873 (1908)). The rule was apparently established in *People v. Newcomer,* 118 Cal. 263, 50 P. 405 (1897). The instruction appears to accurately reflect the law of California on presumptions against the accused in homicide cases as it existed in 1959, including the quantum of evidence necessary to rebut the presumptions. *See* cases cited above; *cf. People v. Wells,* 10 Cal.2d 610, 76 P.2d 493, 500–01 (1938) (court discusses the rules regarding presumptions against the accused). The instruction also apparently reflects current California law under the new California evidence code regarding presumptions against the accused relating to an element of the crime and the quantum of evidence necessary to rebut. *See People v. Tewksbury,* 15 Cal.3d 953, 127 Cal.Rptr. 135, 544 P.2d 1335, 1342–43, *appeal dismissed,* 429 U.S. 805, 97 S.Ct. 38, 50 L.Ed.2d 65 (1976).

We have found no state or federal decisions in Alaska interpreting this instruction prior to *Gray v. State,* 463 P.2d 897, 912 & n. 33 (Alaska 1970).

It seems clear that the *Marrone* instruction falls into the third category of presumptions, those shifting the burden of production, a class specifically exempted from consideration in *Sandstrom* and not discussed at all in *Mann* or *Menard.* Further, *County Court v. Allen* seems *albeit in dicta* to have validated such an instruction. There the court said:

This class of more or less mandatory presumptions can be subdivided into two parts: presumptions that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant. The mandatory presumptions

examined by our cases have almost uniformly fit into the former subclass, in that they never totally removed the ultimate burden of proof beyond a reasonable doubt from the prosecution.

To the extent that a presumption imposes an extremely low burden of production—*e.g.,* being satisfied by 'any' evidence—it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such. See generally *Mullaney v. Wilbur,* 421 U.S. 684, 703 n. 31 [95 S.Ct. 1881, 1892 n. 31, 44 L.Ed.2d 508].

442 U.S. at 157 n. 16, 99 S.Ct. at 2224 n. 16, 60 L.Ed.2d at 792 n. 16 (citations omitted). The *Allen* court's reference to *Mullaney* refers to the following language:

This conclusion is supported by consideration of a related line of cases. Generally in a criminal case the prosecution bears both the production burden and the persuasion burden. In some instances, however, it is aided by a presumption or a permissible inference. These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. Since they shift the production burden to the defendant, these devices must satisfy certain due process requirements. [Requiring a nexus between the fact in evidence and the fact to be presumed.]

In each of these cases, however, the ultimate burden of persuasion by proof beyond a reasonable doubt remained on the prosecution. Shifting the burden of persuasion to the defendant obviously places an even greater strain upon him since he no longer need only present some evidence with respect to the fact at issue; he must affirmatively establish that fact. Accordingly, the Due Process Clause demands more exacting standards before

the State may require a defendant to bear this ultimate burden of persuasion. 421 U.S. at 702 n. 31, 95 S.Ct. at 1891 n. 31, 44 L.Ed.2d at 522 n. 31 (citations omitted). Justice Powell eliminates any confusion regarding the meaning assigned by the United States Supreme Court to the phrases "some evidence" or "any evidence." He makes it clear that they are synonymous with "evidence to justify a reasonable doubt upon the issue." *Patterson v. New York,* 432 U.S. 197, 230–32, 97 S.Ct. 2319, 2337–38, 53 L.Ed.2d 281, 304–05 (1977) (Powell, J., dissenting); *Mullaney v. Wilbur,* 421 U.S. at 701–02 n. 28, 95 S.Ct. at 1890–91 n. 28, 44 L.Ed.2d at 521 n. 28 (citing W. LaFave & A. Scott, *Criminal Law* 539 (1972); R. Perkins, *Criminal Law* 50 n. 14 (2d ed. 1969)). LaFave equates "some evidence" with evidence sufficient to raise a reasonable doubt, W. LaFave & A. Scott, *supra,* at 539–40; *cf.* Perkins, *supra.* This is the same treatment the Alaska Supreme Court gives the phrase "some evidence" in analogous cases dealing with certain defenses and instructions on lesser included offenses. *See LaLonde v. State,* 614 P.2d 808, 810 (Alaska 1980); *Christie v. State,* 580 P.2d 310, 314–15 (Alaska 1978).

Consequently, we conclude that the instruction given here is not within the class of instructions condemned in *Menard* and *Sandstrom.* Further, it was not precluded by the United States Supreme Court's decision in *Morrissette* and the Ninth Circuit's decisions in *Bloch* and *Chappell.* It was therefore not plain error to give it in 1959. *Cf. Gray v. State,* 463 P.2d 897, 912 & n. 33 (Alaska 1970) (where the court sustained this instruction against the challenge that it was ambiguous and not supported by the evidence). The court did not *sua sponte* find plain error despite the fact that intent was an issue in the case. If the error was not "plain" in 1970, it would be hard to find that it was plain in 1959.

In concluding that the instruction was not plain error in 1959, we have not overlooked the supreme court's recent enactment of Rules of Evidence including Rule 303 which would preclude giving the *Marrone* instruction at the present time. We also recognize that adoption of Rule 303 in its present form reflects certain assumptions about constitutional law relevant to an evaluation of the *Marrone* instruction. The commentary makes it clear, however, that the decision to enact the rule was based in part on a desire to avoid resolving the constitutional issues. *See* Evidence Rules Commentary 303 at 59–60.

In *United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), the United States Supreme Court held that the plain error standard of Federal Rule of Criminal Procedure 52(b) is limited to direct appeals and does not apply to applications for post-conviction relief. To obtain post-conviction relief the petitioner must cross "a significant higher hurdle": The cause and actual prejudice standard established in *Davis v. United States,* 411 U.S. 233, 241–42, 93 S.Ct. 1577, 1582–83, 36 L.Ed.2d 216, 224 (1973). While Alaska law is based on federal law, it is not necessary for us to decide whether we should follow *Frady* in interpreting state law since we are convinced that Marrone has not shown plain error.

We must, nevertheless, consider *Frady* to the extent that Marrone bases his constitutional claims in part on Federal law and, in addition, because the federal "cause" plus prejudice test, as it has been interpreted by the federal courts, is similar in effect to Criminal Rule 35(c)(7) which permits a defendant to rely on a "significant change in the law" in seeking post-conviction relief despite a procedural default. Thus, a defendant who shows that both federal and state law were settled against his position at the time of his trial so that any objection would be futile, or that his constitutional claim is so novel that it could not have been anticipated at the time of his trial, apparently meets the "cause" prong of the federal test for post-conviction relief where no contemporaneous objection was made. *See Engle v. Isaac,* —— U.S. ——, ——, 102 S.Ct. 1558, 1572, 1574, 71 L.Ed.2d 783, 801–04 (1982). Such a showing would apparently also meet the test of Criminal Rule 35(c)(7).

In determining whether significant changes in applicable law have occurred and

whether a given objection would have been futile, we would ordinarily consider federal and state constitutional law separately. In 1959, however, the Ninth Circuit Court of Appeals was Alaska's highest court on questions of local law, subject to discretionary review in the United States Supreme Court. The parties have not cited any cases suggesting that the Ninth Circuit treated presumptions against the accused differently when they arose in prosecutions for violations of federal law than when they arose in prosecutions for violations of local territorial law. Therefore, we assume for purposes of this case that the law was the same.

In *Morrissette v. United States*, 342 U.S. 246, 274–76, 72 S.Ct. 240, 255–56, 96 L.Ed. 288, 306–07 (1952), in a federal criminal prosecution the United States Supreme Court held that it was a violation of due process to conclusively presume intent from an act. The court said:

> Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury . . . .
>
> It follows that the trial court may not withdraw or prejudge the issue by an instruction that the law raises a presumption of intent from an act . . . .
>
> We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own violation. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting

presumptions for proof is not without limit.

342 U.S. at 274–76, 72 S.Ct. at 255–56, 96 L.Ed. at 306–07 (footnotes and citations omitted).

In *Bloch v. United States*, 221 F.2d 786, 788–89 (9th Cir.1955), a federal tax evasion proceeding, the Ninth Circuit held an instruction containing the following language to be plain error:

> The presumption is that a person intends the natural consequences of his acts, and the natural inference would be if a person consciously, knowingly and intentionally did not set up his income, and thereby the government was cheated or defrauded of taxes, that he intended to defeat the tax.

While the Ninth Circuit found error in giving similar instructions harmless in later cases, *see, e.g., Legatos v. United States*, 222 F.2d 678 (9th Cir.1955), such instructions were never approved. Consequently, we conclude that the objections made here to the *Marrone* instruction were being made regarding similar instructions and were being considered in the period just preceding trial of Marrone's case (*see Wardlaw v. United States*, 203 F.2d 884, 886–87 (5th Cir.1953); *Grayson v. United States*, 107 F.2d 367, 367–70 (8th Cir.1939)) and occasionally resulted in reversal. Wendel Kay, Marrone's trial counsel, made such an objection, ultimately obtaining a reversal in *Chappell v. United States*, 270 F.2d 274, 279–80 (9th Cir.1959) (which was pending when Marrone was tried). Consequently, acceptance of similar arguments by the United States Supreme Court in *Sandstrom* and our supreme court in *Menard* cannot be viewed as the kind of change in settled law contemplated by Criminal Rule 35(c)(7). Nor can we find that the objection urged here would necessarily have been futile had it been made. Consequently, Marrone has failed to show cause for his failure to object. *Tyler v. Phelps*, 643 F.2d 1095, 1101 n. 9 (5th Cir.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982); *Polizzi v. United States*, 550 F.2d 1133, 1138 (9th Cir.1976); *Dumont v. Estelle*, 513 F.2d 793, 798 (5th Cir.1975). In conclusion, we view the "plain error" rule and the federal

cause plus prejudice rule which we find to be, at least in part, similar in effect to Criminal Rule 35(c)(7), which excuses procedural defaults where there is an intervening change in the law, as complementary. Together, they protect litigants seeking postconviction relief against miscarriages of justice and incompetent counsel. Where the law is settled in defendant's favor, but his counsel fails to object and he suffers substantial prejudice, we will find plain error and reverse. Where the law is settled against the defendant under both state and federal law, but is thereafter changed in defendant's favor under circumstances warranting retroactive application, we will find "cause" for the failure to object and "a significant change in the law" and grant relief on that basis if the defendant establishes substantial prejudice. Where, however, the issue is fairly debatable at the time of trial under both state and federal law, we will treat a timely objection as a prerequisite to post-conviction relief. In the instant case, the *Marrone* instruction was not plain error in 1959. To the extent that recent decisions strengthen Marrone's arguments against the instruction, the holdings of those decisions were foreshadowed by cases decided prior to his trial and, consequently, those holdings cannot be deemed an intervening change in the law warranting consideration in a proceeding for post-conviction relief.

■ In any event, in Marrone's case, we would find no prejudice even if we were to assume error in giving the instruction. Marrone's defense was alibi. Intent, while an element of the crime of second degree murder, was not specifically placed in issue by the evidence of the prosecution or the defense. There was no evidence of accident, provocation or self-defense. To the extent that Marrone attempted to offer such evidence, the trial court held it irrelevant and the supreme court affirmed the decision on appeal after argument. That decision is therefore binding on us. Under the circumstances, therefore, any error would not warrant reversal. *United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Carmen v. State,* 602 P.2d 1255, 1259–60 (Alaska 1979). *Cf.*

*Thomas v. State,* 522 P.2d 528, 531 (Alaska 1974) (failure to properly instruct on essential element of the offense is error but will only require reversal where prejudice is shown).

## OTHER ISSUES

■ Marrone argues that the trial court committed reversible error in failing to record and transcribe the reading of the jury instructions at his trial, thereby violating 28 U.S.C. § 753(b) (1976). The state questions the applicability of this statute to a federal territorial court sitting as an interim state court pursuant to the Alaska Statehood Act of July 7, 1958, Pub.L.No. 85–508, 72 Stat. 339, as amended, 48 U.S.C. prec. § 21 (1958). It is not necessary to decide this question since, if we assume *arguendo* that the federal statute was applicable to Marrone's trial, we find that Marrone suffered no prejudice. *See, e.g., United States v. Smith,* 591 F.2d 1105 (5th Cir.1979); *United States v. Piascik,* 559 F.2d 545 (9th Cir. 1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978); *United States v. Alfonso,* 552 F.2d 605 (5th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 179, 54 L.Ed.2d 129 (1977).

It appears that the instructions were reduced to writing and sent to the jury room and the jury's copy made a part of the record. This was the procedure established by Alaska Statute at that time, A.C.L.A. 1949 66–13–5 (7th). Marrone does is not suggest that the instructions read to the jury differed in any respect from the instructions sent to the jury and, in the absence of any such suggestion, we find no prejudice. *Holt v. Powell,* 420 P.2d 468, 471 (Alaska 1966); Alaska R.App.P. 210(k).

■ Marrone's final contention is that he is impermissibly subjected to state parole supervision. He argues that he was convicted in a federal district court and should be under federal parole supervision subject to the custody of federal authorities rather than on state parole. We believe this issue is foreclosed by *Donnelly v. State,* 516 P.2d 396, 402 (Alaska 1973). Marrone is a state prisoner serving a state sentence imposed by a state court, *see Marrone v. State,* 359 P.2d 969, 971 (Alaska 1961); *Hobbs v. State,*

359 P.2d 956, 958–64 (Alaska), *appeal dismissed,* 367 U.S. 909, 81 S.Ct. 1923, 6 L.Ed.2d 1250 (1961). For purposes of parole board jurisdiction, the date of trial rather than the date of the offense would appear controlling. *See Ozenna v. May,* 354 F.2d 651 (9th Cir.1966).

The judgment of the superior court is AFFIRMED.

BRYNER, Chief Judge, concurring.

I am in agreement with Judge Coats that this court should not, in the context of this case, consider and decide a number of difficult and complex issues as to the scope of post-conviction relief under Alaska law when the issue raised was not preserved by a contemporaneous objection at trial. In particular, I do not think this case requires us to adopt or reject the "cause and prejudice" standard adopted by the United States Supreme Court.[1] Nor do I think we need determine whether or to what extent plain error will be considered in Alaska post-conviction relief applications.[2] In my view, because it is not strictly necessary to decide these issues in the present case, their resolution must be deferred until they are more directly presented in future cases.

I do not believe, however, that the opinion written by Judge Singleton purports to decide these issues. Rather, as I read the opinion, it considers Marrone's claim in the light of alternative analyses and demonstrates that Marrone would not be entitled to relief under any arguable theory. Based on this understanding, I join in Judge Singleton's opinion.

COATS, Judge, concurring.

I agree with the conclusion reached in the majority opinion that the superior court did not err when it denied relief to Marrone on his post-conviction relief applications.

It seems to me that at a minimum Marrone must meet the high standard of showing "plain error" to prevail. *See United States v. Frady,* —— U.S. ——, ——, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816, 829 (1982). I see no reason why he should be permitted to meet any lower standard on a post-conviction relief application than he would have to meet on a direct appeal. I believe the majority opinion amply demonstrates that this case does not present an unusual set of circumstances where a defendant might be excused from making a contemporaneous objection. Furthermore, the majority opinion amply demonstrates that the possibility of prejudice to Marrone from the instruction which he now attacks was minimal. The conclusion is inescapable that Marrone has not shown plain error and is not entitled to relief.

I see no reason to go further with any analysis to decide the case before us. I see the plain error rule as a safety valve which exists to allow a defendant relief from the contemporaneous objection rule in cases where applying the contemporaneous objection rule would result in injustice. Relief from the rule is allowed only in particularly compelling cases based upon the weighing of many factors. I hesitate to try to create a rule which attempts to set out when we will give relief under the plain error rule.

I am particularly hesitant to decide when, if ever, a party might not have to comply with the contemporaneous objection rule to preserve an error for purposes of appeal or post-conviction relief. *See Engle v. Isaac,* —— U.S. ——, ——, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 802 (1982). For me it is sufficient to conclude that in the case before us Marrone was required to object to preserve any error pertaining to the instruction.

---

1. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also Engle v. Isaac,* —— U.S. ——, ——, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 801 (1982) (extending the "cause and prejudice" requirement to post-conviction relief applications raising issues of constitutional error that affect the truth-finding function of trial).

2. *See United States v. Frady,* —— U.S. ——, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (holding plain error inapplicable in post-conviction relief proceedings under federal law).